## PROVIDENCE COUNTY.

---

SMITH QUIMBY *vs.* JASON T. WOOD.

An act of the General Assembly, passed April 29, 1892, incorporating the "Apponaug Fire District," empowered the district, after notice, to order taxes for certain purposes and to a limited amount, and to provide for assessing and collecting the same. Section 4 of the act provides for the annual election by the district of a "clerk, treasurer, three assessors, and a collector of taxes, whose duties and powers within said district shall be such as like officers of towns in this State have in their respective towns."

After a district tax had been regularly assessed and a copy of the assessment roll, together with a warrant for the collection of the tax, had been delivered to the collector, in accordance with Pub. Stat. R. I. cap. 43, §§ 2, 4, 6–8, 18–20, and the time had expired within which the tax was to be assessed, the district, at a meeting called for the purpose, voted to reduce the valuation of certain property, and to abate a portion of the tax assessed thereon, and the collector changed the assessment roll so as to conform to the vote of the district. In other instances the assessors, after the delivery of a copy of the assessment roll to the collector, made certain changes in the assessment roll, in some cases because real estate taxed was found to be located out of the district, in other cases because of over-valuation of personal property, and by way of compromise where there was a disputed liability, but in all cases without any fraudulent purpose.

*Held*, that neither the fire district nor the assessors had any authority to change the valuation of property, or to abate any tax assessed thereon; and their authority over the matters having become exhausted, their proceedings after the delivery of the assessment roll to the collector were mere nullities, and did not invalidate the original assessment.

There is no authority short of the General Assembly to abate a tax which has been legally assessed; and

*Query*, whether the General Assembly has such power in view of the Constitutional provision that the public burdens ought to be fairly distributed.

Pub. Stat. R. I. cap. 37, § 20, requiring the collector of taxes for a town to give a bond for the faithful discharge of his duties does not apply to the collector of taxes for the Apponaug Fire District, whose charter does not require the collector to give any bond, and hence, the fact that he has given no bond does not render his official acts void.

Municipal taxes are not liens upon lands taxed unless made so by the charter, or unless the corporation is expressly authorized by the legislature to declare them to be liens; nor is there any power to sell lands for non-payment of taxes unless such power is conferred by statute in express terms.

Hence, where the charter of a fire district gave no lien for taxes, and granted no power to sell property for non-payment of taxes, the collector of taxes for the district cannot sell property for non-payment of taxes assessed against it, and he will be enjoined at the suit of a tax-payer brought in his own behalf and in behalf of other tax-payers, from selling property under a levy for fire district taxes.

The case of *Greene* v. *Mumford*, 5 R. I. 472, distinguished from the case at bar.

BILL IN EQUITY for an injunction. Heard on pleadings and proofs.

The General Assembly passed an act incorporating the Apponaug Fire District, April 29, 1892.

The material portions of the act before the court in this case were §§ 4, 5, as follows:

SEC. 4. Said taxable inhabitants at each annual meeting, and at any other meetings when vacancies may occur, may elect officers to serve for one year, or until the next annual meeting, and others be chosen in their stead, which officers shall consist of a moderator, clerk, treasurer, three assessors and a collector of taxes, whose duties and powers within said district shall be such as like officers of towns in this State have in their respective towns; they may also elect firewards, and any other needed officers and committees, with such powers as they may designate.

SEC. 5. Said taxable inhabitants, at any of their legal meetings, and by giving at least seven days notice by posting up notices in not less than three public places in said district, and specifying in said notice the intention so to do, shall have power to order such taxes, and provide for the assessing and collecting the same, on the taxable inhabitants and property in said district as they shall deem necessary for purchasing and procuring implements and apparatus for the extinguishment of fire, and for other necessary expenses.

But no tax or taxes shall be ordered or assessed on the taxable inhabitants of said district, or on the taxable property therein, to exceed thirty cents on each one hundred dollars of said taxable property in any one year, or in any period of twelve months time.    And such taxes so ordered shall be assessed by the assessors of said district on the taxable inhabitants and property therein according to the last valuation made by the assessors of the town next previous to said assessment, adding, however, any taxable property which may have been omitted by said town assessors or afterwards acquired, and in all cases where the town assessors have included property within the district and property without the district in one valuation, the assessors of the district shall make an equitable valuation of that portion of the same lying within the district.    And in the assessing and collecting of said taxes, such proceedings shall be had by the officers of said district, as near as may be had by the corresponding officers of towns in assessing and collecting town taxes other than is hereinbefore provided.

The duties and powers of town officers in reference to taxes, referred to in § 4 of the above mentioned act, are, so far as is material to the case, defined by Pub. Stat. R. I. cap. 43, §§ 2, 4, 6–8, 18–20, as follows :—

SEC. 2.    Assessors and boards of assessors in the several towns and cities shall assess all taxes legally ordered under such rules and regulations, not repugnant to law, as the towns and city councils respectively shall from time to time prescribe.

SEC. 4.    The assessors shall assess and apportion any tax on the inhabitants of the town and the ratable property therein, at the time ordered by the town.

SEC. 6.    Before assessing any tax the assessors shall post up printed notices of the time and place of their meeting, in three public places in the town, for three weeks next preceding the time of such meeting, and advertise in some newspaper published in the town, if any there be, for the same space of time.    Such notices shall require every person and body corporate liable to taxation to bring in to the assessors

a true and exact account of all his ratable estate, describing and specifying the value of every parcel of his real and personal estate, at such time as they may prescribe.

Sec. 7. Every person bringing in any such account shall make oath before some one of the assessors that the account by him exhibited contains to the best of his knowledge and belief a true and full account and valuation of all his ratable estate ; and whoever neglects or refuses to bring in such account if overtaxed shall have no remedy therefor.

Sec. 8. The assessors shall make a list containing the true, full and fair cash value of all the ratable estate in the town, placing real and personal estate in separate columns, and distinguishing those who give in an account from those who do not, and shall apportion the tax accordingly.

Sec. 18. The assessors, on completing the assessment as aforesaid, shall date and sign the same and deposit it in the office of the town clerk. ·

Sec. 19. The town clerk shall forthwith make a copy of the same, and deliver it to the town treasurer.

Sec. 20. The town treasurer shall forthwith issue and affix to said copy a warrant under his hand, and which need not be under seal, directed to the collector of taxes of the town, commanding him to proceed and collect the several sums of money therein expressed, of the persons and estates liable therefor, by the time directed by the town, and to pay over the same to him or to his successors in office. Whenever any town shall elect its town treasurer collector of taxes for such town, such warrant shall be issued to the town treasurer as collector of taxes, by the town clerk.

*July* 20, 1896. TILLINGHAST, J. This is a bill in equity brought against the respondent, who claims to be the collector of the Apponaug Fire District, to enjoin him from selling certain real estate of the complainant under a levy of a tax assessed against the complainant by said fire district. The suit is brought by the complainant in his own behalf and in behalf of all other taxpayers of said district. The answer denies the material allegations of the bill. There is a general replication, and testimony has been taken by a

commissioner. The relief is asked on the grounds, (1) that there were wilful and intentional irregularities on the part of the assessors in the assessment of the tax, which render the whole assessment void ; (2) that the respondent is not, and never was a collector of said fire district, because he never properly qualified as such ; (3) that the tax, even if properly assessed, is not a lien upon real estate, and that the proposed sale would therefore be illegal ; (4) that a penalty, in the form of interest, has been added, without authority, to the tax originally assessed, and included in the amount for which the levy has been made upon the complainant's property ; and (5) that the levy, even if originally good, has been lost by a lapse of the advertisement since said levy was made.

It appears from the testimony that the property of the New York, New Haven & Hartford Railroad Company was first regularly assessed by the assessors of the fire district for $150,000, making its tax $300 ; that after the assessment roll had been delivered to the respondent, together with a warrant for the collection of the tax, this valuation was reduced to $100,000, and the tax to $200, which latter sum is all that was collected. The circumstances in which this was done were as follows : After the making of said assessment the railroad company complained that its tax was excessive, whereupon a meeting of said fire district was called to consider the matter of abating the tax, which meeting was held on May 15, 1894. Said railroad company was represented at the meeting by its agent, who complained in behalf of the railroad company that it had been taxed for $200,000, that this sum was too high, and he asked to have it reduced ; whereupon, after some discussion, a motion was made and carried that the valuation be reduced to $100,000. It was also voted that the amount of the tax assessed against said railroad company of $300 be reduced to $200. That is to' say, the district voted to abate $100 of the original assessment. After the district had taken the action aforesaid the respondent changed the assessment roll in his possession, in conformity therewith.

The testimony further shows that, after the assessment roll had been completed and delivered to the collector, as aforesaid, a number of other alterations were made therein by the assessors. For instance : John H. Northup had been taxed for real estate valued at $100. It was afterwards ascertained that said real estate was not located in said district, and hence the assessors abated the tax thereon. J. H. Northup and others,—the Brayton property,—by mistake of the assessors, had all been taxed in said fire district, while $1000 worth thereof was located outside of the district. The assessors therefore abated $1000 on the valuation thereof, and reduced the tax accordingly. William Henry Harrison was taxed according to the town valuation, for real estate $23,000, and for personal estate $35,000. He had refused to pay his town tax, and a law suit was had concerning it by the town of Warwick, whereupon said town made a compromise, reducing the amount of personal property assessed to him in the sum of $15,000, and said fire district made the same reduction. This reduction was made after the district tax had been assessed as aforesaid. Caroline Smith was taxed in said town for $12,000, real estate, and the district assessors taxed her for the same amount ; but, upon subsequently ascertaining that a part of said real estate was not in the district, the assessors abated $2000 on the valuation thereof, and abated the tax accordingly. Harvey E. Wellman, trustee, was taxed for $4200 real estate and $2200 personal property. The tax on the personal property was abated by the assessors because they found out that there was no personal property of his in the district, and because said Wellman refused to pay the tax thereon. Josiah Westcott was taxed for real estate valued at $100. It was afterwards ascertained that this land was not in the district, and hence the tax was abated.

None of the persons above named had filed any sworn statement with the assessors as to the amount of their real or personal estate, for the purpose of taxation, as required by law ; nor had they filed any such statement with the town assessors, in connection with the assessment of the town tax.

The question which arises, in view of the facts above set out, is whether the irregularities mentioned rendered the entire tax illegal and void, as alleged in the bill.   We do not think they did.   The tax had been regularly assessed before said alterations were made, except as to the taxing of that part of the real estate aforesaid that was situated outside the district limits, and a warrant, duly issued, had been placed in the hands of the respondent for the collection thereof.   And while it is doubtless true that both the fire district and the assessors acted entirely without legal authority in making most, if not all, of the alterations aforesaid in the assessment roll, yet we fail to see how this could invalidate the tax. Moreover, there is no proof whatsoever that said changes were made fraudulently, as alleged in the bill.   On the contrary, we think it is fairly to be inferred that the alterations were made in pursuance of an honest, though misguided, attempt to correct certain errors which had been made in the assessment of the tax, and also so to adjust the claims of certain dissatisfied taxpayers, growing out of the assessment in question, as to render the tax collectible without resort to legal process.

Of course we do not wish to be understood as approving of, or even excusing, the methods employed.   After the tax had been assessed and the assessment roll delivered to the collector, with a warrant to collect the tax, neither the fire district nor the assessors had any authority to change the valuation, or abate the tax assessed against any individual or corporation.   At the most, they could only correct a manifest mistake therein.   But they had no right to revalue the property, or abate any one's tax.   The tax had been duly ordered and laid by the district; the time within which it was to be assessed had expired ; the assessment roll, with the accompanying warrant, had been delivered to the collector ; and hence the authority, both of the district and of the assessors as well, over those matters, had become exhausted, and it only remained for the collector to proceed with the collection of the tax according to law.   Indeed, there is no authority, short of the General Assembly at any

rate, to abate a tax which has once been legally assessed; and there may be grave doubt as to whether the General Assembly even can do it, in view of the constitutional provision that the public burdens ought to be fairly distributed. *McTwiggan* v. *Hunter*, 18 R. I. 776. If a true and exact amount of one's ratable estate, both real and personal, is made to the assessors as required by statute, and the person rendering such account is afterwards overtaxed or aggrieved by the assessment, he has a remedy. Gen. Laws R. I. cap. 46, §§ 14–19. But in case of neglect or refusal to render such an account, the person so neglecting or refusing is without remedy if overtaxed. *Greene* v. *Mumford*, 4 R. I. 313, 321; *American Bank* v. *Mumford*, 4 R. I. 479; *Tripp* v. *Merchants' Mutual Fire Ins. Co.*, 12 R. I. 436; *Hopkins* v. *Young*, 15 R. I. 48; *Coventry Co.* v. *Assessors*, 16 R. I. 240; *Tripp* v. *Torrey*, 17 R. I. 359.

We are therefore of the opinion that, for the purposes of this case at any rate, all of said irregular and unlawful proceedings may properly be treated as null and void and of no importance, and hence as not having the effect to invalidate the tax originally assessed.

The second point made by the complainant is that the respondent has never qualified as collector of said fire district, because he has never given bond for the faithful discharge of his duties. And he refers to Pub. Stat. R. I. cap. 37, § 20, (now Gen. Laws, cap. 39, § 17,) which provides that "Every collector of taxes shall give bond, with sufficient surety, for the faithful performance of such trust, to the town treasurer of the town for which he is chosen, in such sum as the said town, or the town council of said town, shall appoint, not exceeding double the amount of the tax with the collection of which he shall be charged;" and urges that, as under section 4 of said charter the "duties and powers" of the assessors and collector are such as appertain to like officers in towns, it was therefore obligatory upon the respondent to give bond before he could proceed with the collection of the tax. We do not agree to this construction. The "duties and powers" mentioned in said section of the charter do not relate to the

*election and qualification* of the collector, but to those things which he has authority and is required by law to do subsequently thereto. The charter of said fire district nowhere requires the collector to give bond ; no amount has been fixed by the district ; nor has he been required by it to give any bond. However desirable it may be, therefore, that a collector should give bond for the faithful performance of his duties, yet, in the circumstances aforesaid, the mere fact that the respondent has not given bond does not render his official acts void.

The third point made by the complainant is that the tax in question, even if legally assessed, is not a lien upon real estate, and hence cannot be collected by levy on, and sale of, the real estate of the complainant.

It is well settled that municipal or corporation taxes are not liens against the property on which they are assessed unless made so by the charter, or unless the corporation is authorized by the legislature to declare them to be liens. 2 Dill. Munic. Corp. 4th ed. § 821 ; 2 Desty on Taxation, p. 743, and cases cited ; *Heine* v. *The Levee Commissioners,* 19 Wall. 655 ; *City of Jefferson* v. *Whipple,* 71 Mo. 519 ; 25 Amer. & Eng. Encyc. of Law, 267–272, and cases cited ; *Ham* v. *Miller,* 20 Iowa, 450 ; Blackwell on Tax Titles, 4th ed. p. 516.

Under the caption "*Foundations of the Power to Sell Land,*" Mr. Black, in his work on tax titles, 2d ed. § 152, says : "By what power and authority does a public officer assume to seize and sell my land after my neglect or refusal to discharge the taxes upon it ?    To this we answer, he acts exclusively under statutory authority.    The officer is a stranger to the title ; he sells that which he does not own ; and he can have no right to make any such sale except in so far as he is constituted the agent of the law for that purpose. The power to assess and levy taxes, and to demand payment, does not carry with it the right to make sale of lands for the purpose of collection, but that right must be expressly given by statute." Judge Cooley, in his work on taxation, p. 470, says : "The power which the State confers to assess and

levy taxes does not of itself include a power to sell lands, in enforcing collection, but the power to sell must be expressly given."

In *Ham* v. *Miller, supra,* the court, in speaking of the power to sell real estate for non-payment of taxes, uses the following language : "We need not say that this power, sovereign in its nature, must not depend for its existence upon mere inference, but must always be created by express grant. . . . . In most of the city charters the power to thus sell and convey is given in express words. To all such this act would apply ; but not to a corporation like Dubuque, possessing no such power." See also 25 Amer. & Eng. Encyc. of Law, pp. 368–369, and cases cited.

There is clearly no lien for taxes expressly granted by the charter of said fire district. Nor is there any express grant of authority to sell property for non-payment of taxes. Neither is there any language in the charter from which such a power could be implied, if implication were permissible, unless it is the latter part of § 4, and the closing paragraph of § 5, as follows : "And in the assessing and collecting of said taxes, such proceedings shall be had by the officers of said district as near as may be had"—(probably this should read "as near as may be, as *are* had")—"by the corresponding officers of towns in assessing and collecting town taxes other than is hereinbefore provided." As argued by counsel for the complainant, however, it is only in cases where "any parcel of real estate is *liable* for the payment of taxes"—(Pub. Stat. R. I. cap. 44, § 10), i. e., where the taxes are a *lien* on the real estate,—that a town collector may levy upon and sell it. In the absence, therefore, of any authority to create a lien upon real estate for district taxes, no power of sale can be even inferred from the language of the charter above quoted.

It is significant in this connection that by Pub. Stat. R. I. cap. 46, § 5, the provisions of the statutes relative to taxation by the towns, (including, of course, the provisions of Pub. Stat. R. I. cap. 44, § 2, 3, which make such taxes a lien upon real estate,) are made applicable to all highway

and school district taxes, while said statute is silent as to fire district taxes.  If it be argued that § 2 of said chapter 44, which provides that "All taxes assessed against any person in any town, for either personal or real estate, shall constitute a lien on his real estate therein" is broad enough to include fire district taxes, we think it is sufficient to reply that said chapter relates solely to the collection of town taxes, and therefore to extend its provisions to the collection of district taxes would be giving to it an unwarrantable interpretation.  It is to be observed that, in regard to town taxes, Pub. Stat. R. I. cap. 44, not only makes all town taxes a lien on the real estate of the taxpayer, but expressly provides for the enforcement of such lien by sale and conveyance of the property.  Section 10 provides that "In all cases where any parcel of real estate is *liable* for the payment of taxes, so much thereof as is necessary to pay the tax, interest, costs, and expenses, shall be sold by the collector, at public auction, to the highest bidder, after notice has been given of the levy," &c.  This statute evidently means that, in order to warrant the collector in proceeding to levy upon and sell the property itself, instead of proceeding against the person taxed therefor, to recover the tax, the property itself must be *liable* for the payment of the tax by reason of a lien thereon.  And hence it follows that, in the absence of such lien, no authority exists to proceed against the property in this way.

Again, the levy by the collector, in the case at bar, did not have the effect to create a lien on the property, as he had no authority to make such levy.  It is true the charter confers upon him, within the district, the same duties and powers as town collectors have in their respective towns.  But town collectors have no power to create a lien on real estate.  They only have power to enforce the lien which the statute gives.  They have power to advertise and sell property for the payment of taxes, only because the statute expressly confers it upon them.

It has even been held that where the charter of a city conferred upon it the power "to levy and collect" a special tax

for local improvements, and declared such tax to be "*a lien*" upon the real estate upon which it should be assessed, and no mode of collection was prescribed, that this did not carry with it the power to collect such tax by a sale of the property upon which it was assessed. See opinion of Dillon, J., in *McInerney* v. *Reed*, 23 Iowa, 410.

The case at bar is distinguishable from that of *Greene* v. *Mumford*, 5 R. I. 472, in that the complainant here shows special equities as ground of relief and particularly in that no power to sell real estate is conferred upon the collector of said fire district.

Having thus arrived at the conclusion that the respondent has no authority to sell the property in question for the non-payment of the tax assessed against the complainant, it becomes unnecessary to consider the other subsidiary questions raised in the case.

Injunction granted.

*Stephen O. Edwards & Walter F. Angell*, for complainant.

*Dexter B. Potter*, for respondent.