SAYLES FINISHING PLANTS, INC. *vs.* MARTIN J. TOOMEY, *Tax Assessor of the Town of East Providence.*

FEBRUARY 13, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

472

PowERS, J.   This is a petition for relief from an alleged overassessment of the petitioner's real estate by the assessor of taxes of the then town of East Providence, for the tax assessed on December 31, 1956.   It was brought under the

provision of G. L. 1956, §44-5-26, and is based on the petitioner's allegation that it has duly filed an account of its ratable estate with the assessor in compliance with the requirements of §§44-5-15 and 44-5-16. The case was heard before a justice of the superior court, without the intervention of a jury, and resulted in a decision denying the petition for lack of jurisdiction. It is before us on the petitioner's bill of exceptions, but it is prosecuting only its exception to the decision.

The record discloses that respondent, acting in his capacity as tax assessor, did, in December 1956, give notice to every person, copartnership and corporation liable to taxation in East Providence to bring in and file with him as tax assessor a true and exact account of the ratable estate owned or possessed by him or it in the town as of December 31, 1956, at 12:00 noon. The notice was given pursuant to the provisions of §44-5-15.

The petitioner, a Rhode Island corporation, acting in accordance therewith, gave notice by letter dated January 4, 1957 of its intention to file with respondent between April 1 and 15, 1957, a true and exact account of its ratable property.

Thereafter, on April 12, 1957, petitioner filed with respondent a sworn account which purported to be a full, true and exact account of all of its ratable property located in East Providence. Such account specifically set forth the real estate owned by it, identifying each parcel by plat and lot, stating improvements, if any, and ascribing to each parcel the value thereof. The total value placed by petitioner on its land was $154,420, with $844,995 for buildings and improvements. The respondent, however, assessed said land and improvements at substantially more than the value attributed thereto by petitioner, although the assessment of December 31, 1956 was the same as for December 31, 1955 and several years prior thereto.

In addition to setting forth its real estate as aforesaid, the account purported to include its ratable personalty by identifying the same as follows:

"Machinery propelled by power in factory, machine shop, manufacturing establishment, etc.   [$]537,500.
\* \* \*

"Stock in trade,                                                182,500.
"Store, shop and office fixtures,                      12,500.
\* \* \*

"Vehicles,                                                          3,000."

The petitioner paid the assessed tax under protest and within the time allowed by law duly filed its petition for relief from an alleged overassessment of its ratable real property, in accordance with §44-5-26. This section specifically provides that the relief afforded thereby shall be available only to a taxpayer who has made an account of his ratable property as provided in §§44-5-15 and 44-5-16, the pertinent provisions of which are as follows:

§44-5-15: "Before assessing any valuations, the assessors shall cause printed notices of the time and place of their meeting to be posted in three (3) public places in the town, for three (3) weeks next preceding the time of such meeting, and shall advertise in some newspaper published in the town, if any there be, at least once a week for the same space of time. Such notices shall require every person and body corporate liable to taxation to bring in to the assessors at such time as they may prescribe a true and exact account of all the ratable estate owned or possessed by him or it, describing and specifying the value of every parcel of such real and personal estate, together with such additional information as may be prescribed by the assessors relative to such ratable estate as may be contained in any corporation or inheritance tax return filed with the state by such person within the year preceding the date of assessment next prior to the bringing in of such account; provided, however, that if any person or body corporate liable to taxation shall file with the assessors, on or before the expiration date prescribed by the assessors as aforesaid, a written notice of his or its inten-

tion to bring in an account, such person or body corporate may bring in to the assessors such account at any time between April 1st and April 15th next following the date of assessment."

§44-5-16: "Every person bringing in any such account shall make oath before some notary public or other person authorized to administer oaths in the place where such oath is administered that the account by him exhibited contains, to the best of his knowledge and belief, a true and full account and valuation of all the ratable estate owned or possessed by him; and whoever neglects or refuses to bring in such account, if overtaxed, shall have no remedy therefor, except * * *."

At the trial of the case, petitioner did not offer to contest the assessment on its personal property nor on all of its real estate. It contested only the assessment on that portion of its real estate which, subsequent to the date of assessment, namely, October 14, 1958, had been sold to Almac's Inc. for $350,000.

The trial consumed some fifty-seven days, during which more than 4,000 pages of testimony were compiled, numerous exhibits received and the premises viewed by the trial justice. Experts testifying on behalf of petitioner gave extensive evidence of comparable sales. Robert B. Dresser, a trustee of the Frank A. Sayles trust, which in turn owns all of the stock of petitioner, testified that about 1953 steps were taken with a view to selling the property in question as a going concern. He further testified that despite exhaustive efforts which extended over several years, no such purchaser could be found. There then followed the sale of the property to Almac's Inc. as aforesaid.

An examination of the conveyance from petitioner to Almac's discloses that the latter purchased the property subject to petitioner's excepting therefrom its rights to take water from and to flow Omega Pond, so called.

Elliot Broadbent, president of petitioner corporation, testified that for years prior to the sale of the property to

Almac's, petitioner had been deriving some $10,000 annually from the sale of such water to Washburn Wire Company, Bird & Son, Inc., and Kennecott Wire & Cable Company. He further testified that some time after the sale to Almac's, petitioner sold its water rights but was not asked and did not specify the consideration involved.

There is in the record a deed from petitioner to Washburn Wire Company dated February 10, 1960 which specifically conveys the water rights in question. Although the federal stamps indicate that the purchase price was in excess of $250,000, it is not possible to determine the consideration paid for such rights since the conveyance also includes several other parcels of realty.

The property in issue was assessed by respondent in the sum of $1,719,935. On the basis of the actual sale to Almac's in October 1958, comparable sales, opinions furnished by experts and her view of the premises, the trial justice found the fair market value of the property in question to have been $546,717.50 on December 31, 1956.

She further found as a matter of law, however, that although petitioner's property had been overassessed by something more than one million dollars, petitioner was not entitled to the relief it sought for the reason that the court was without jurisdiction to grant it.

Relying on *Coventry Co.* v. *Assessors of Taxes,* 16 R. I. 240, *Clarke* v. *Tinkham,* 20 R. I. 790, and *Ewing* v. *Tax Assessors,* 93 R. I. 372, 176 A.2d 69, the trial justice held that petitioner's description of its personal property was too general, so as not to constitute "a true and exact account of all the ratable estate owned or possessed by him or it" as required by §§44-5-15 and 44-5-16. She further held that the account was also defective in that it failed to include petitioner's "right to flow," which she found to be ratable property within the definition of that term is laid down in *Coventry Co.* v. *Assessors of Taxes, supra.*

The petitioner first contends that the trial justice erred in holding the account to be defective for failure to specify its rights to the water in Omega Pond as a separate parcel of ratable property. It argues that such rights were appurtenant to the land fully set forth and described in the account. Moreover, it urges that if the water rights in question should have been separately designated and valued, the omission was not fraudulent as presently required by §44-5-30.

In this regard petitioner relates the history of §44-5-30, showing that when the *Coventry Co.* case was decided the statute simply provided for judgment against the taxpayer if at the trial it should appear that any ratable property had been omitted from the account without regard to whether such omission was intentional or otherwise. The petitioner further showed that the section was later amended to provide for the "willful" concealment or omission, and still later that the concealment or omission must be fraudulent. It argues that there is no evidence whatsoever of any fraudulent intention to omit a description and valuation of water rights from its account.

The petitioner misconceives the import of §44-5-30. In our judgment the legislature intended thereby to deny relief to a taxpayer who, having brought in an account which on its face purports to be a true, full and exact description of every parcel of real and personal property as required by §§44-5-15 and 44-5-16, has omitted some item of ratable property with the deliberate intention of fraudulently concealing the taxpayer's interest therein.

The petitioner argues, and we think with justification, that the legislature did not intend to penalize a taxpayer who by inadvertence, oversight or mistake neglected to include ratable property in an account which in all other respects was sufficiently descriptive so as to support a petition brought pursuant to the provisions of §44-5-26.

Indeed such a conclusion can be gathered from the history of the legislation as related by petitioner. The provisions of §§44-5-15 and 44-5-16 do not differ materially from the provisions of Public Statutes 1882, chap. 43, secs. 6 and 7. By the provisions of P.S. 1882, chap. 43, sec. 15, however, now §44-5-30, the taxpayer was denied relief if at the trial it appeared that he "concealed or omitted any property from his account, or has not placed a fair value thereon * * *." A reading of the combined provisions demonstrates that any concealment or omission, however trifling, operated to deprive the taxpayer of a judicial review.

With the enactment of G. L. 1896, chap. 46, sec. 17, the legislature had relaxed the burden of the minuteness previously required by providing that such concealment or omission must be willful. The general assembly further relaxed such provision by the enactment of P. L. 1932, chap. 1945, substituting "fraudulently" for "wilfully." Such relaxation, however, did not result in relieving a taxpayer who intended to contest whatever assessment might be placed on his ratable property from making a return to the assessors which was so full, true and exact as to be something more than a generic classification amounting to nothing more than a mere generalization of its personalty. *Ewing* v. *Tax Assessors, supra.*

The general assembly has not materially altered P.S. 1882, chap. 43, secs. 6 and 7. Hence, petitioner's suggestion that *Coventry Co.* v. *Assessors of Taxes,* and *Clarke* v. *Tinkham, supra,* are not applicable to the instant case is without merit, since both cases were clearly decided on the sufficiency of the account required by the provisions of those sections.

In the case at bar the trial justice concluded that the account, as it related to petitioner's personal property, was so lacking in sufficiency as to be inadequate and thus defective. An examination of the account, heretofore set out in this opinion, leads us to the conclusion that the trial jus-

tice did not err in characterizing petitioner's description of its personal property as "inadequate." The account fails to describe the nature or quantity of the obviously various types of machinery located in separate and distinctive sections of the mill property. It is to be noted that no distinction whatsoever is made between petitioner's machinery and other personal property, except for the reference to "Stock in trade" which clearly does not refer to fixtures. Indeed the reference to "Stock in trade" gives no indication as to what percentage thereof might be goods to be processed, in process or finished. It should be noted that these observations are made not by way of referring to omissions, but rather to the vagueness which, considered altogether, establish the account as not being true, full and exact, as required by the statute.

In *Stone* v. *Norris,* 40 R. I. 477, not otherwise in point, this court referred to the nature of the account as requiring "the extent, character and particulars of an individual's ownership of personal property * * *."

Whether the remaining classifications of petitioner's personalty are sufficient so as to comply, we need not consider.

The petitioner further contends, however, that if the account is found to be insufficient, nevertheless respondent should not be heard to object for the reason that he furnished the form which did not call for a more detailed description than that which was furnished. The trial justice correctly observed that respondent was under no obligation or duty to supply any taxpayer with a form. Indeed respondent could not waive the requirements of the statute which must be met as a condition precedent to the jurisdiction of the court. It was for petitioner, whether using a form supplied by respondent or one independently fashioned, to bring in an account contemplated by the legislature in its mandate as heretofore interpreted by this court.

The petitioner further contends that the decision of the trial justice constitutes prejudicial error for the reason that

the interpretation which she placed on §§44-5-15 and 44-5-16 results in a denial of due process and thus is violative of the fourteenth amendment to the United States constitution. In support thereof it cites a number of federal decisions to the effect that due process requires that before a tax shall become irrevocably fixed a taxpayer must be apprised of its right to a hearing which must be real and not merely apparent.

We are in full accord with the principles decided in the cases cited, but on their facts they are clearly distinguishable from the circumstances of the instant case.

Here the legislature has provided that respondent was required to hold hearings at a time or times subsequent to the effective day of assessment; that petitioner should receive notice in advance as to the time and place of such hearings; and that by making a full, true and exact account of its ratable property, describing each parcel of its real and personal property and placing a value thereon, the taxpayer would be entitled to a judicial review of the tax eventually assessed if in the opinion of the taxpayer such assessment was excessive.

Clearly the legislature intended the account, made under oath, to constitute a taxpayer's representation as to the character, extent and particulars of its ratable property at the hearing afforded by the statute. Moreover, the general assembly has provided a taxpayer with more than three and one-half months in which to prepare an account from his or its records. The very purpose of providing for such an account is to afford the taxpayer protection against an over-assessment. It is to be noted that by the very terms of the statute a taxpayer is entitled to a judicial review of an assessment which he claims to be illegal, as distinguished from excessive, without the prior requirement of making an account.

We are not persuaded that *Bishop* v. *Tax Assessors,* 47 R. I. 351, as is argued by petitioner, indicates that requiring

literal compliance with the provisions of the statute might constitute a denial of due process. There a taxpayer was seriously ill, out of the state and clearly incapable of attending to her business affairs. She died prior to the expiration of the time fixed by the assessors for their meetings, and her executors, when appointed, forthwith attempted to swear before the assessors to an account which, in all other particulars, was proper within the meaning of the statute. The assessors refused to take the oath on the ground that the time therefor had passed, whereupon their authorized attorney swore to the account before a notary public. The assessors received the account and a hearing was held thereon, resulting in an assessment which this court held to be excessive.

Construing the phrase "whoever neglects or refuses to bring in such an account, if overtaxed, shall have no remedy therefor," this court held that in the circumstances of that case there was not such neglect as the legislature had in mind, since it was not likely that the general assembly intended to require a taxpayer to do that which was impossible to be done.

Nor is there any merit in petitioner's contention that the statute is lacking in specification as to how a taxpayer may comply with its requirements. This court has repeatedly defined the legislative intent as requiring such sufficiency in the separation and description of the various parcels of real and personal property as to be of assistance to the assessor in assessing a tax against each such parcel.

The petitioner concedes, as was held by this court in *Ewing* v. *Tax Assessors, supra*, that "Household furniture in excess of $300.00" was not sufficient so as to comply with the requirements of the statute. It attempts to distinguish the instant case and argues that the account made by it was more meaningful. We fail to perceive how "Stock in trade, 182,500." is more enlightening than the scope of the infor-

mation reported in the *Ewing* return, or "Machinery propelled by power in factory, machine shop, manufacturing establishment, etc. 537,500." is any more informative than "goods, chattels, wares and merchandise 3384." held by this court to be insufficient in *Clarke* v. *Tinkham, supra.*

Finally, the petitioner argues that since the trial justice found the assessment against it to be excessive by something more than one million dollars, her decision that the petitioner was not entitled to relief constitutes a gross miscarriage of justice. This argument begs the question. The finding referred to by the petitioner was purely gratuitous since the court was without jurisdiction to make it. It was made, we perceive, as a conscientious effort to give this court the benefit of her findings in the event that the petitioner's account, contrary to her conclusion, so complied with the requirements of the statute as to vest the superior court with jurisdiction.

The petitioner's exception is overruled, and the case is remitted to the superior court for entry of judgment on the decision.

ROBERTS, J., dissenting. I am unable to concur in the majority's conclusion that the trial justice properly dismissed for want of jurisdiction the taxpayer's petition for relief from an assessment pursuant to §44-5-26. The trial justice found that the account returned by the taxpayer to the respondent assessor was insufficient and inadequate to constitute the true and exact account of all ratable estate owned or possessed by the taxpayer which is required to be filed with the assessor under the provisions of §44-5-15. Having so found and apparently following the decision of this court in *Ewing* v. *Tax Assessors,* 93 R. I. 372, 176 A.2d 69, the trial justice concluded that the taxpayer had not filed "an account" as prescribed under the provisions of §44-5-26 and therefore was not entitled to the benefit of the remedy to review the assessment as provided therein.

The clear purpose of §44-5-26 is to provide for a review of an assessment of a tax by any person aggrieved on any ground whatever by any assessment of taxes. The procedure for obtaining such review is by petition to the superior court. Section 44-5-26 contains a proviso that "in case such person has not filed *an account,* he shall not have the benefit of the remedy provided in this section * * *." (italics mine) If I concede the correctness of the majority's view that the account filed by the taxpayer in the instant petition is not a true and exact account as contemplated in §44-5-15, I cannot agree that the phrase "an account" contained in §44-5-26 contemplates giving the taxpayer a review of the assessment only if he has filed the full and exact account provided for in §44-5-15.

The majority holds that in enacting §44-5-26 the legislature intended that the account provided for therein as a condition precedent to the taxpayer's right to have a review of an overassessment is the true and exact account required to be returned to the assessor under §44-5-15. I am of the opinion that to so construe the phrase "an account" in §44-5-26 is to do violence to the well-settled rule of statutory construction that statutes remedial in purpose should be liberally construed so as to permit an accomplishment of that purpose. It is my view that §44-5-26 is remedial, it obviously being a statute that was designed to provide a simple and convenient method through which the taxpayer may require a just assessment of the tax imposed upon his property. *Thrift* v. *Thrift,* 30 R. I. 357. I am of the further opinion that this court in *Bishop* v. *Tax Assessors,* 47 R. I. 351, clearly treated this provision as being remedial in character.

The provisions of §44-5-26 disclose a legislative intent to provide all taxpayers with a method for obtaining a review concerning the validity of the assessments of their property. This review has been made available without regard

to whether an account has been filed when the legality of the assessment is challenged or the property in question has been assessed at a value in excess of that at which it had been assessed at the last prior assessment thereof. It is only when the challenged assessment does not exceed the amount of the last prior assessment that the filing of an account is a condition precedent to the taxpayer's right to the review provided for in said §44-5-26.

I perceive no sound reason for holding that the legislature intended to burden this latter class of taxpayers with the obligation to file the true and exact account prescribed in §44-5-15 as a condition precedent to obtaining a review of a challenged assessment while excepting all other taxpayers challenging an assessment from an obligation to file any account at all. Section 44-5-15 has application to all taxpayers and requires the making of a true and exact account as prescribed therein, and failure to so do waives any right to make such an account. In other words, there is a universality of application as to the requirement of §44-5-15 to make a true and exact account, while the requirement contained in §44-5-26 concerning the filing of an account is applicable to a limited class of taxpayers. To construe this statute as to impute to the legislature an intention to burden the limited group of taxpayers with the filing of the true and exact account prescribed in §44-5-15 in order to obtain a review, while exempting from that burden all other taxpayers seeking a review under §44-5-26, is, in my opinion, irrational. I cannot agree that such an intention should be imputed to the legislature.

In *People ex rel. New York City Omnibus Corp.* v. *Miller*, 282 N. Y. 5, the New York court said at page 9 of that opinion: "The Tax Law relating to review of assessments is remedial in character and should be liberally construed to the end that the taxpayer's right to have his assessment reviewed should not be defeated by a technicality." The

majority opinion, when viewed in the light of the remedial purpose of §44-5-26, makes inescapable the conclusion that the instant taxpayer's right to have its assessment reviewed was defeated by a technicality.

The instant decision requires the instant taxpayer, in order to obtain the review contemplated in §44-5-26, to file what amounts to an inventory of all of its ratable property as is prescribed in §44-5-15 and denies it such review on the ground that though it has filed an account, it does not comply literally with the inventory required to be filed in §44-5-15. It is my opinion that the account filed by the taxpayer in the instant case, conceding that it does not comply with the requirements of §44-5-15, is a sufficient account to warrant a review of the challenged assessment within the meaning of that phrase as used in §44-5-26. It clearly is a sufficient account to put the assessor on notice as to the claim of overassessment against which he must defend.

Because the majority has taken the view that the account filed by the instant taxpayer did not constitute compliance within the requirement of §44-5-26, any discussion as to the effect of my views of the proper construction of §44-5-26 on prior decisions of this court would be superfluous.

*Edwards & Angell, Gerald W. Harrington, Ronald R. Lagueux,* for petitioner.

*Sarkis Tatarian,* City Solicitor, *Joseph T. Little,* Assistant City Solicitor, for respondent.