403 A.2d 658.

CIC-NEWPORT ASSOCIATES *vs.* KENNETH V. STEIN, *Tax Administrator.*

JULY 11, 1979.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

Doris, J. This statutory petition for relief from a tax allegedly illegally and excessively assessed as of December 31, 1970, against the plaintiff's real property was brought in the Superior Court pursuant to G.L. 1956 (1970 Reenactment) §§44-5-26 to 31 against the Assessor of Taxes for the City of Newport. It is before us on the plaintiff's appeal from a judgment entered by a trial justice, sitting without a jury, dismissing the petition. The trial justice held that because of the express provision of §44-5-26, the plaintiff's failure to file the account mandated in §44-5-15 precluded it from challenging the assessment as excessive. He further held that the assessment was not illegal. We affirm.

The evidence presented at trial consisted of stipulated facts and the testimony of a real estate appraiser who testified for plaintiff. The property in question, designated as "parcel 1A," had been acquired by the Newport Redevelopment Agency (the agency) by eminent domain at a cost of $1,186,200. The parcel of approximately five acres of land had originally consisted of thirty-four separately ratable lots. As a result of a municipal redevelopment plan, all of the buildings, improvements, alleyways, and interior streets on the separate lots were obliterated. On December 31, 1970, the property was assessed by defendant at $505,350, which figure was 40 percent of the full and fair cash value of $1,263,375. The resultant tax on the assessed valuation was $45,986.85. This assessment, which was identical to the assessments for the prior three years, was the sum of the assessments on the thirty-four lots that originally comprised parcel 1A.

On June 25, 1971, plaintiff purchased parcel 1A, which was then a unitary, vacant tract, from the agency for $206,000. As is typical in cases in which land is sold for the purposes of urban renewal, the deed from the agency to plaintiff contained several use restrictions. The real estate expert called by plaintiff, Peter A. Laudati, Jr., testified regarding a "reuse appraisal" he had made of the land. He

stated that because of the relatively stringent use controls imposed by the agency, the fair market value of parcel 1A was 90 cents per square foot, or $206,000.

The plaintiff never filed an account as required by §44-5-15 because it acquired title to the property after March 15, 1971, the deadline for filing such accounts. *See* §44-5-15. The last date for payment of the tax without penalty was August 15, 1971. This action was commenced on November 12, 1971. On September 28, 1972, plaintiff paid the tax under protest and the penalty was subsequently paid.

On appeal plaintiff raises three issues. First, it contends that, because it acquired title after the account-filing deadline, it should not be estopped from challenging the assessment as excessive even though no account was filed. Second, it argues that the assessment was so grossly excessive and improperly derived that it is illegal. Third, it argues that the facts presented an appropriate case for equitable relief as contemplated in §44-5-27.

General Laws 1956 (1970 Reenactment) §44-5-26 provides as follows:

> "Any person aggrieved on any ground whatsoever by any assessment of taxes against him in any city or town, may within three (3) months after the last day appointed for the payment without penalty of such tax, or the first instalment thereof, if such tax be payable in instalments, file a petition in the superior court for the county in which such city or town lies for relief from such assessment * * *
>
> * * *
>
> "Provided, however, that *in case such person has not filed an account*, he shall not have the benefit of the remedy provided in this section and in §§44-5-27 to 44-5-31, inclusive, unless (1) his real estate has been assessed at a value in excess of the value at which it was assessed on the last preceding assessment day, *whether then owned by him or not*, and has been assessed, if

assessment has been made at full and fair cash value, at a value in excess of its full and fair cash value, or, if assessment has purportedly been made at a uniform percentage of full and fair cash value, at a percentage in excess of such uniform percentage, or (2) the tax assessed is illegal in whole or in part; and his remedy shall be limited to a review of the assessment on such real estate or to relief with respect of such illegal tax as the case may be." (Emphasis added.)

This statute, as all taxing statutes, must be strictly construed against the taxing authority and all doubts resolved in favor of the taxpayer. *See, e.g., Newport Gas Light Co. v. Norberg,* 114 R.I. 696, 699, 338 A.2d 536, 538 (1975); *Potowomut Golf Club, Inc. v. Norberg,* 114 R.I. 589, 592, 337 A.2d 226, 227 (1975); *Manning v. Board of Tax Commissioners,* 46 R.I. 400, 410, 126 A. 865, 870 (1925). With this canon as our guide, we are called upon to determine whether the trial justice erred when he held that, because plaintiff had not filed an account, his jurisdiction was limited to reviewing the legality of the assessment.[1]

The statutory requirement that a taxpayer file an account of his ratable property is designed to aid the assessors in their duty of rendering a proper assessment. *E.g., Van Alen v. Stein,* 119 R.I. 347, 352, 376 A.2d 1383, 1387 (1977); *Ewing v. Tax Assessors,* 93 R.I. 372, 375, 176 A.2d 69, 71 (1961); *Coventry Co. v. Assessors of Taxes,* 16 R.I. 240, 242, 14 A. 877, 878 (1888). In its wisdom the Legislature has conditioned a taxpayer's suit for relief from an overassessment upon the filing of such an account. This court has consistently held that the failure to file an account deprives the Superior Court of jurisdiction to consider the taxpayer's claim of overassessment. *See, e.g., Van Alen v. Stein,* R.I. at 347, 376 A.2d at 1391; *Brown & Sharpe Manufacturing Co. v. Cote,* 101 R.I. 668, 675, 226 A.2d 814, 818 (1967); *Sayles*

---

[1]The parties stipulated that the property had not been "assessed at a value in excess of the value at which it was assessed on the last preceding assessment day," and therefore the first exception contain in §44-5-26 is not applicable.

*Finishing Plants, Inc.* v. *Toomey,* 95 R.I. 471, 482, 188 A.2d 91, 95 (1963); *Ewing* v. *Tax Assessors,* 93 R.I. at 376, 176 A.2d at 71; *Quimby* v. *Wood,* 19 R.I. 571, 578, 35 A. 149, 150-51 (1896); *Tripp* v. *Torrey,* 17 R.I. 359, 362, 22 A. 278, 278 (1891); *Tripp* v. *Merchants' Mutual Fire Insurance Co.,* 12 R.I. 435, 436 (1879).

The plaintiff acknowledges this general rule but argues that it should not apply in the instant case because it was impossible for plaintiff to file an account within the time constraints established in §44-5-15. The plaintiff stresses that §44-5-15 requires only those persons "liable to taxation" to bring an account of all the ratable estate owned or possessed by him. The plaintiff contends that because it was not liable to taxation, nor did it own or possess any ratable estate on the assessment date, it should not be estopped from challenging the excessiveness of the assessment. Additionally, plaintiff places considerable emphasis upon this court's decision in *Bishop* v. *Tax Assessors,* 47 R.I. 351, 133 A. 342 (1926). In *Bishop* the taxpayer was required to file her account between June 15 and June 20. She was unable to file the account because of a serious illness that resulted in her death on June 19. This court held that the taxpayer's executors could seek statutory relief from alleged overtaxation even though the account was not timely filed. *Id.* at 355-56, 133 A. at 344. The *Bishop* court reasoned that the taxpayer's estate should not be denied a remedy because the taxpayer's failure to file an account was unavoidable. *Id.* at 356, 133 A. at 344. The plaintiff argues that the reasoning in *Bishop* is dispositive in the instant case because it was likewise impossible for plaintiff to file an account. We believe, however, that *Bishop* is distinguishable. The taxpayer in *Bishop* owned ratable property on the assessment date and was therefore within the statutory class of persons who could file an account. Her subsequent illness prevented her from complying with the account requirement. The plaintiff, on the other hand, was never within that class of persons.[2]

---

[2]The Legislature recognized the import of *Bishop* when it amended §44-5-16 in 1932, thereby permitting a person who is ill or absent from the state to appoint an

The fact that plaintiff owned no ratable property on the assessment date, and therefore was legally precluded from filing an account regarding parcel 1A, is indeed at the crux of the matter. The only party who could timely file such an account was plaintiff's grantor, the agency. The plaintiff, as grantee, acceded only to those rights held by its grantor at the time of the conveyance. From the date of the assessment, December 31, 1970, a tax lien attached to parcel 1A. *See* §44-9-1. The plaintiff's subsequent acquisition of the property, which was encumbered by the lien, did not afford it any greater right to challenge the tax assessment than the agency enjoyed when it held title. Were the rule otherwise, any purchaser of real property who acquired title after March 15 could freely challenge the existing assessment even though the assessors had been deprived of the information normally contained in an account. If the Legislature intended such a broad exception to the statutory scheme, with the attendant disruption to the assessing process, they would have explicitly provided accordingly.

The plaintiff contends that it should not be limited to the rights of its grantor in this particular case because the agency is an arm of the municipal government and therefore lacks the typical interest of a property owner in insuring that its land is not overtaxed. We believe that the judiciary is not the proper body to carve out such an exception to the statute. Were we to imply such an exception, we would be engaging in judicial legislation rather than judicial review. Our function is not to redraft statutes but to construe what the Legislature has enacted. *Goldman* v. *Forcier,* 68 R.I. 291, 297, 27 A.2d 340, 343 (1942); *Moretti* v. *Division of Intoxicating Beverages,* 62 R.I. 281, 286, 5 A.2d 288, 290 (1939). Additionally, plaintiff overstates the relationship between the agency and the taxing authority. The tax statute does not grant any special status to property held by a redevelopment agency. See §45-32-40. Furthermore, we have held on several

---

agent to make the requisite oath that the submitted account is true and complete. *See* P.L. 1932, ch. 1945, §2.

occasions that a public corporation is not synonymous with municipal government. *See, e.g., Little* v. *Conflict of Interest Commission,* 121 R.I. 232, 238-239, 397 A.2d 884, 885 (1979) (member of redevelopment agency not a member or officer of municipal government for purposes of Conflict of Interest Act); *Housing Authority* v. *Fetzik,* 110 R.I. 26, 33, 289 A.2d 658, 662 (1972) (housing authority not a political subdivision of the state); *Kennelly* v. *Kent County Water Authority,* 79 R.I. 376, 381, 89 A.2d 188, 191 (1952) (water authority not a municipal authority for purposes of filing rate schedules).

The Legislature did insert one very relevant exception in §44-5-26. Should the challenged assessment exceed the prior assessment, the taxpayer, *even if he was not the property owner at the time of the assessment,* may argue overtaxation despite his failure to file an account. *See* §44-5-26. The Legislature did not similarly provide for a case such as this in which the assessment remained unchanged. This difference in treatment reflects a calculated legislative intent that we are not free to subvert. *See, e.g., Campanella Corp.* v. *Zoning Board of Review,* 106 R.I. 495, 498, 261 A.2d 644, 646 (1970).

We also note that plaintiff could have attempted to preserve its right to challenge the assessment by including appropriate language in its purchase and sale argeement with the agency requiring the latter to file an account. Its failure to do so undercuts its contention that the trial justice's construction of the statute was fundamentally unfair.

Although plaintiff was properly precluded from arguing overtaxation, it was not left without remedy. Section 44-5-26 provides that relief from illegal taxation may be granted notwithstanding the lack of an account filing. Section 44-5-27 further provides for equitable relief in a "proper case." Thus, the Legislature provided a mechanism for judicial review in a case such as this.

The plaintiff contends that it was illegally taxed in two respects. First, it alleges that the assessment was so grossly

excessive as to be illegal. It argues that the full and fair cash value employed by the assessor, $1,263,375, was six times greater than the fair market value of the property as established by expert testimony. Second, it urges that the assessment was illegal because it was based upon thirty-four separate parcels rather than parcel 1A as a single entity.

The trial justice found that the full and fair cash value of the property on the assessment date was much greater than the $206,000 urged by plaintiff. He believed that the amount established by the tax assessors more clearly and accurately represented the full and fair cash value of parcel 1A. This factual finding is accorded great weight and will be disturbed by us only upon a showing that the trial justice was clearly wrong or that he overlooked or misconceived material evidence. *E.g., Russo v. Stearns Farm Realty, Inc.,* 117 R.I. 387, 391, 367 A.2d 714, 717 (1977); *DeBartolo v. DiBattista,* 117 R.I. 349, 352-53, 367 A.2d 701, 703 (1976); *Raheb v. Lemenski,* 115 R.I. 576, 579, 350 A.2d 397, 399 (1976). Contrary to plaintiff's assertion, Laudati's appraisal was not the only evidence in the record regarding the value of parcel 1A. The trial justice also had before him the price originally paid by the agency for the land and the assessors' valuation. In addition, the assessors were accorded a presumption that they properly performed their official acts. *See Greenough v. Board of Canvassers,* 33 R.I. 559, 571, 82 A. 406, 411 (1912); 16 McQuillin, *Municipal Corporations* §44.124 at 331 (3d ed. 1979). The trial justice accepted the assessors' valuation and concluded that the assessment was neither excessive nor illegal. In so finding, the trial justice was not clearly wrong.

A mere mistake in valuation resulting in an excessive assessment does not amount to illegal taxation. *See, e.g., Sayles Finishing Plants, Inc. v. Toomey,* 95 R.I. at 482, 188 A.2d at 97; *Tripp v. Torrey,* 17 R.I. at 362, 22 A. at 279; *Dexter Horton Building Co. v. King County,* 10 Wash.2d 186, 190, 116 P.2d 507, 510 (1941); Annot., *Tax Refund Statute-Scope,* 110 A.L.R. 670 (1937). Typical examples of an illegal assessment include the situation in which exempt property is assessed for taxation, *Graves v. McDonough,* 264

Ala. 407, 409, 88 So.2d 371, 373 (1956); *cf. St. Clare Home v. Donnelly,* 117 R.I. 465, 473, 368 A.2d 1214, 1216 (1977); in which the assessors act entirely without jurisdiction, 84 C.J.S. *Taxation* §513 at 983 (1954); in which the assessment is knowingly or intentionally made in a discriminatory manner, *Addington v. Board of County Commissioners,* 191 Kan. 528, 532, 382 P.2d 315, 319 (1963); or in which the assessment is fraudulently rendered. *Cities Service Oil Co. v. Murphy,* 202 Kan. 282, 289, 447 P.2d 791, 796 (1968). None of these categories apply to the instant case. Furthermore, even had the trial justice found that the assessment was excessive, he would have been justified in concluding that it did not amount to an illegal tax. *See Sayles Finishing Plants, Inc. v. Toomey,* 95 R.I. at 482, 188 A.2d at 97 (case of overtaxation, rather than illegal taxation, where property with fair market value of $546,717 assessed at $1,719,935); *Tripp v. Torrey,* 17 R.I. at 362, 22 A. at 279 (case of overtaxation, rather than illegal taxation, where $5,000 personal estate tax assessed when only ratable property owned by taxpayer was a watch).

The plaintiff contends, however, that the assessment was not merely excessive but also qualitatively defective because it was based upon thirty-four separate parcels rather than parcel 1A as a single entity. Section 44-5-12 directs that all property be assessed at full and fair cash value or a uniform percentage thereof. Full and fair cash value has been defined as the price property would probably bring in a fair market between a willing seller and a willing buyer. *Rosen v. Restrepo,* 119 R.I. 398, 400, 380 A.2d 960, 961 (1977). When determining the full and fair cash value of ratable property, the tax assessor engages in a discretionary act and is not bound by any particular formula. *See Kargman v. Jacobs,* 113 R.I. 696, 704, 325 A.2d 543, 547 (1974). Although the method of valuation employed by the assessors in the instant case was certainly not the optimal alternative, we cannot say that it resulted in an illegal assessment. As one court has aptly observed:

> "The mere fact that the assessing officers have proceeded on a fundamentally wrong basis or that the

assessment is excessive is not of itself alone sufficient to justify the intervention of the courts at the instance of the taxpayer. Before a court of equity will grant relief against the acts of such officers, it must clearly appear that the assessment is so palpably exorbitant and excessive as to amount to constructive fraud or to violate some constitutional principle." *Ozette Railway* v. *Grays Harbor County,* 16 Wash. 2d 459, 467, 133 P.2d 983, 987 (1943).

*See Cities Service Oil Co.* v. *Murphy,* 202 Kan. at 289, 447 P.2d at 796. In the trial justice's opinion, the assessment was not excessive, despite the improper valuation technique employed. Having reached such a conclusion, with justification, we cannot say that the assessment was "so palpably exorbitant or excessive" as to be illegal.

The plaintiff's final argument is that the facts presented an appropriate case for the grant of equitable relief as contemplated in §44-5-27. The plaintiff's complaint simply recited a boilerplate claim for "such other relief as the court may deem equitable and just." The record before us does not indicate whether the plaintiff even pursued this claim during the trial below. Furthermore, the plaintiff's brief merely states that the assessment was grossly excessive and cites a single case for the broad proposition that "equity will not suffer a wrong without a remedy." Therefore, we would not be unjustified in holding that the plaintiff has waived this argument. *See Malinou* v. *Rhode Island Hospital Trust National Bank,* 116 R.I. 548, 552 n.4, 359 A.2d 43, 45 n.4 (1976); *Devereaux* v. *Kelly,* 106 R.I. 499, 501, 261 A.2d 843, 844 (1970). Although the trial justice did not specifically address the plaintiff's equitable claim, he did explicitly find that the assessment was not excessive. Accordingly, the plaintiff did not sustain his burden of proof on this issue.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings.

Mr. Justice Joslin did not participate.

*Richard M. Borod, George Shuster,* for petitioner.

*James O'Brien,* for defendant.