Robert H. LOWRY et al.

v.

Frank FARAONE, Jr., Tax
Assessor, et al.

No. 83–179–Appeal.

Supreme Court of Rhode Island.

Nov. 22, 1985.

James J. Longolucco, Longolucco, Vinci & Sloan, Westerly, for plaintiffs.

Edward H. Newman, Adamo & Newman, Westerly, for defendants.

---

OPINION

KELLEHER, Justice.

This is a Superior Court class action that seeks to have declared as invalid and illegal the 1975 real estate taxes assessed by the town of Richmond. The challenge was heard by a Superior Court justice who, after consideration of memoranda, found for the defendants, the town's tax assessor, its board of tax-assessment review, and town council. The plaintiffs asked that the 1975 assessment be voided and that their real estate taxes be based upon the 1974 assessment. Since none of the plaintiffs had filed an account of their taxable property as called for in G.L. 1956 (1980 Reenactment) § 44–5–15,[1] they were limited by the terms of § 44–5–26 in their challenge to claim that the assessment exceeded the full and fair cash value of such properties or was illegal in whole or in part.

At the trial the assessor told the trial justice that, in assessing the real estate, he had revalued the land but not the buildings. He took this approach because, in his words, "structures throughout the town were closer to market value than the land, and I felt that it was imperative that we try to get the land values as close as possible to the structure values seeing that they were so disproportionate."

In making his assessment, the assessor also relied upon comparable sales of land in Richmond as well as land sales in the neighboring towns of Charlestown and Hopkinton. With this information in hand, the assessor then established what he considered to be the fair market value of land in the following categories: farm land, $500 an acre; woodland, $300 an acre; wasteland, $100 an acre; tillable land, $700 an acre; nursery stock, $1,500 an acre; golf greens, $2,000 an acre; and house lots, 6 to 10 cents per square foot, with adjustments being made, in the house-lot category, for such factors as location. The tax assessor informed the trial justice that when he had determined fair market value, he assessed the town real estate at 60 percent of its value, pointing out that the 60 percent ratio "has been used in Richmond for a number of years."[2]

As far as buildings were concerned, he employed separate calculations to establish their value. For buildings that were being assessed for the first time, he used the reproduction-less-depreciation method, and for the remaining structures he imposed the previous assessments.

Another witness for defendants was a realtor and real estate appraiser who at the time of trial was the current tax assessor for the town of Richmond. He testified that the market-data approach employed by the 1975 assessor was one of the three accepted methods for appraising real estate. He also expressed the belief that defendant assessor "was using good comparable sales and did not do anything out of the way as far as the land values are concerned. They are well in line. In fact, they are below, as far as I am concerned, what the fair market value would generally be."

The plaintiffs presented as their witness Kenneth Stein (Stein), the former long-time tax assessor for the city of Newport, who described himself as an "appraiser of real estate and [a] real estate consultant and advisor." In his testimony Stein took issue with the assessor's approach and stressed the importance, in assessing land, of considering such factors as location, size, shape, topography, subsoil conditions, available utilities, and the question of whether the property abuts a paved or unpaved street.

---

1. Although we refer in this opinion to the 1980 Reenactment, the pertinent statutes which we cite have remained unchanged since the late 1960s.

2. Although in this controversy we have continued to refer to the term "full and fair cash value," the Legislature, at its January 1965 session, authorized municipal assessors to assess all taxable property at its full and fair cash value or at a uniform percentage thereof. The percentage formula is now a part of G.L. 1956 (1980 Reenactment) § 44–5–12.

Having referred to the pertinent evidence, we now turn to the relevant principles of law. Full and fair cash value has been defined as the price a willing buyer would pay to a willing seller in an open market. *CIC-Newport Associates v. Stein,* 121 R.I. 844, 853, 403 A.2d 658, 663 (1979); *Rosen v. Restrepo,* 119 R.I. 398, 400, 380 A.2d 960, 961 (1977). As recently as *Ajootian v. Hazard,* — R.I. —, —, 488 A.2d 413, 416 (1985), we specifically approved the use of comparable sales as a method for appraising real estate for tax assessment purposes. Again, a tax assessor is accorded a large measure of discretion in making an assessment and is not bound by any particular formula. *CIC-Newport Associates v. Stein,* 121 R.I. at 853, 403 A.2d at 663. Finally, as noted in *Kargman v. Jacobs,* 122 R.I. 720, 731, 411 A.2d 1326, 1332 (1980), absent proof to the contrary, it is presumed that tax assessors perform their official duties properly, and this presumption imports legality to the assessed valuations.

■ Here the trial justice specifically found that the assessor's approach to the assessment of land only did not result in the assessment of the taxpayers' real estate beyond its full and fair cash value. As this court has said on numerous occasions, the trial justice's findings of fact are to be given great consideration on appeal and shall not be disturbed unless this court is persuaded that the trial justice has overlooked or misconceived material evidence or was otherwise clearly wrong. *Ajootian v. Hazard,* — R.I. at —, 488 A.2d at 417; *Picerne v. DiPrete,* — R.I. —, —, 428 A.2d 1074, 1078 (1981). Here the trial justice was confronted with conflicting expert testimony and thus was free to choose one opinion over another. He chose to accept the testimony given on behalf of the town of Richmond, and on this record we cannot fault him.

■ The remaining facets of the taxpayers' appeal merit brief comments. In making up the tax roll, the assessor listed the valuations of land and of buildings in separate columns. The plaintiffs now argue that the separate listings violate the provisions of § 44-5-20 because, in their opinion, the statute mandates a listing of land and buildings in one column. Section 44-5-20 provides that

> "assessors shall make a list containing the true, full and fair cash value or a uniform percentage thereof * * * of the ratable estate in the town placing the real estate, tangible personal property * * * and manufacturers' machinery and equipment in separate columns."

At trial the tax assessors of the towns of Westerly and Hopkinton testified that they, like Richmond's assessor, listed separate assessments for land and buildings before adding them together for a total tax.

The assessor's separate listing appears to us to be a simple procedural device that does not violate the provisions of the statute. It is elementary that, in analyzing real estate values, separate calculations for land and buildings may be made, using different methods, if necessary. *Travellers Building Ass'n v. Providence Redevelopment Agency,* 106 R.I. 83, 256 A.2d 5 (1969). In the absence of any express statutory mandate to the contrary, this court will not invalidate an assessment simply because the items complained of were listed separately.

■ This litigation began with the filing of a complaint in the Washington County Superior Court in late November 1975. Presentation of testimony in the case began on Tuesday, February 1, 1977, and came to an end on February 4. At the conclusion of testimony, the trial justice asked counsel for the submission of memoranda in support of their respective positions, and the trial justice's decision was filed approximately 5½ years later. This "blatant delay," in plaintiffs' opinion, requires an overturning of the trial justice's

decision. We cannot concur in such thinking.

In this jurisdiction there is no limit on the time that may elapse between trial and decision, and the plaintiffs are unable to cite any authority to support their contention that the decision should be overturned simply because of the delay. Primary reliance is made on *Inland Drilling Co. v. Davis Oil Co.*, 183 Neb. 116, 121, 158 N.W.2d 536, 539 (1968), where the court "disapproved" of a three-year delay between trial and decision. We are "concerned" with the delay in the case at bar, but such delay is not cause for vacating the judgment that was entered in the controversy.

The plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.

BEVILACQUA, C.J., did not participate.