Francis C. Bishop *et al. Exrs. vs.* Tax Assessors, City of Newport.

Same *vs.* Alice N. Leonard, City Treasurer.

MAY 26, 1926.

Present: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1)   *Taxation.   Return.   Inability to Make Return.   Relief.*

Gen. Laws, 1923, cap. 60, of taxation requires every one liable to taxation to bring in an account and to make oath thereto personally before someone of the assessors.

*Held*, that where one liable to taxation was seriously ill and died within the period fixed for making returns and was unable to make return, her estate could not secure relief by petition against the assessors, as the foundation of that remedy and the basis of judgment on such a petition is the statutory return filed with the assessors.

*(2)   Taxation.   Return.   Inability to Make Return.   "Neglect."*

Gen. Laws, 1923, cap. 60 of taxation provides that "whoever neglects or refuses to bring in" an account shall be remediless.

*Held,* that where a taxpayer was seriously ill and died within the period fixed for making returns and was unable to make return this was not a neglect in the meaning of that term in the statute.

*Held,* further, that where the assessors with full knowledge of the exact amount of the ratable estate made an excessive assessment the estate of the taxpayer was entitled to recover the amount paid in excess of the proper tax.

*(3)   Taxation.   Construction.*

Although cap. 60, Gen. Laws, 1923, of taxation is not strictly a penal statute, it is in part of that nature and should be strictly construed in such part, if injustice and inequality of taxation are thereby prevented.

Two actions brought by executors to recover amount of alleged overpayment of taxes. First action by petition against assessors. Second action at law against City Treasurer. Certified on agreed statements of facts, under Gen. Laws, cap. 348, sec. 4, of 1923.

STEARNS, J. These are two actions brought by the executors of the estate of Mary M. Baldwin to recover the amount of an alleged overpayment of taxes. The forms of the actions are different but one tax payment only is in issue.

The cases have been certified to this court on like agreed statements of facts (G. L. 1923, C. 348, s. 4).

The assessors of Newport gave notice of the time for making returns of ratable estates and announced that they would be in session for the purpose of receiving such returns from June 15 to June 20, 1924.

Mary M. Baldwin, a resident of Newport, on June 15 was dangerously ill in New York City. She was physically unable to attend to any business or to appear before the assessors. She died June 19, 1924, before the expiration of the prescribed period for the making of returns. Plaintiffs were appointed the executors of her estate August 6, 1924. The executors prepared an account of the ratable estate of the deceased which, on September 16, 1924, was by their authorized attorney presented to the assessors. The request

of the attorney to make oath to the return before some one of the assessors was denied for the reason stated that such oath could be made only at the time prescribed in the statutory notice. The return was then sworn to by the attorney before a notary public, was received and filed by the assessors and a hearing was given thereon to the attorney. This return it is admitted in the agreed statement of facts contained a true statement of all of the ratable property of deceased at the time of her death and on said June 15th, which was the date for assessment. The total amount of the estate consisting of intangible personal property was $998,281.36.

The board of assessors did not complete and file their assessment roll in the office of the city clerk of Newport as required by General Laws, 1923, C. 60, ss. 8 and 20, until October 24, 1924. The intangible personal property of deceased was then assessed at $2,500,000. The tax on this amount was paid under protest. The questions raised are: Are the executors entitled to recover from the city the sum of $6,000 that being the amount of excessive taxation, if any? Plaintiffs do not seek to avoid payment of the entire tax but only so much as is in excess of what the tax should be. The statutes provide that the assessment shall be made by the assessors on the valuation of the property as of the fifteenth day of June of each year (C. 60, s. 1); before assessing any tax, the assessors shall give notice of the time and place of their meeting and all persons liable to taxation are required to bring in to the assessors a true and exact account of all their ratable estate (ss. 6 and 7); every person bringing in any such account shall make oath before some one of the assessors that the account by him exhibited is a true and full account and valuation of all of his ratable estate; and "whoever neglects or refuses to bring in such an account, if overtaxed, shall have no remedy therefor".

Section 14 provides that if any person shall bring in his account, the assessors shall nevertheless assess his ratable estate at what they deem its full and fair cash value and

section 15 that any person aggrieved thereby may petition the Superior Court for relief against such assessment in a proceeding brought against the tax assessors. This was the procedure in No. 6152. The statute requires every one liable to taxation to bring in an account and to make oath thereto personally before some one of the assessors. The purpose of thus requiring the personal appearance of the taxpayer before the assessors is that a hearing may be had by the taxpayer, if it is desired, on the amount of his taxable estate. *McTwiggan* v. *Hunter*, 19 R. I. 265. This provision in regard to making tax returns is directory not mandatory as the assessors are given no authority to compel a disclosure. *Stone* v. *Norris*, 40 R. I. 477. The duty of the assessors however is the same whether a return is or is not made as section 3 provides that all property liable to taxation shall be assessed at its full and fair cash value. The assessors are not bound by the return but in all cases are required to exercise their own judgment and assess the property at its full and fair cash value (C. 60, s. 14). As in the case at bar no return as required by the statute was made, the executors can not secure relief by petition against the assessors, as the foundation of that remedy and the basis of judgment on such a petition is the statutory return filed with the assessors.

Defendants argue that plaintiffs' claim is for relief from overtaxation and, as no return was made within the prescribed time, no relief can be had as there is no exception made in the statute to cover the case of a taxpayer who is unable to make the required return. The question raised is a new one and its answer is dependent on the construction of the statute. It has been heretofore decided that if the taxpayer had any property subject to be taxed, if he did not make a return, he had no remedy for overtaxation, and it was only if he had no such property that he could recover for what was called illegal taxation. *Tripp* v. *Merchants' Mutual Fire Ins. Co.*, 12 R. I. 435; *Quimby* v. *Wood*, 19 R. I. 571; *Tripp* v. *Torrey*, 17 R. I. 359; *Hall* v. *Bain*, 18

R. I. 413.   The authority of these cases is not now intended to be questioned but in none of them was there an inability of the taxpayer to make a return.   The denial of a remedy by the statute to one who is overtaxed is only to "whoever neglects or refuses to bring in such an account".   Did the deceased neglect to bring in an account within the meaning of that word as used in the statute?   We think she did not.

The word "neglect" has two meanings, both in the law and in common use.   It may mean an omission or failure to do an act or perform some duty, or such an omission or failure due to the want of due care or attention; in the latter sense, there is the implication of an ability to do the act or perform the duty with power to exercise a choice.   In *Hackfeld & Co.* v. *United States*, 197 U. S. 442, the question was of the construction of a federal statute requiring the owner of a vessel which had brought immigrants into the United States not permitted to land here, to send them back on the same vessel that brought them in, and providing that if any owner "shall refuse or neglect" to return such aliens to the port from which they came he shall be deemed guilty of a misdemeanor and shall be subject to a fine, etc.

(2) The government contended that the statute required an absolute duty of returning such immigrants and that the word "neglect' therein was equivalent to "fail" or "omit". This contention was overruled.   The court in its opinion ( pp. 448, 449) says:   "The word 'neglect' as sometimes used, imports an absence of care or attention in the doing or omission of a given act, or it may be used in the sense of an omission or failure to perform some act.   To 'neglect' is not always synonymous with to 'omit'.   Whether the use of the term is intended to express carelessness or lack of attention required by the circumstances, or to express merely a failure to do a given thing, depends upon the connection in which the term is used and the meaning intended to be expressed. . . .   While the term may be used as indicative of carelessness, it may also merely mean an omission or failure to do or perform a given act."   It was held

that the statute was intended to secure, not the delivery of the immigrant, at all hazards, but to require only good faith and full diligence to carry him back to the port from whence he came.

(3) Although our statute is not strictly a penal statute, it is in part of that nature and should be strictly construed in such part, if injustice and inequality of taxation are thereby prevented. As already stated, one purpose of the statute is to give the taxpayer a hearing. This right to a hearing was, we think, intended to be general and to be given to all persons subject to be taxed. We do not think the legislature intended to require that which is impossible to do or to deny any remedy for excess of taxation to those who in good faith and without any fault, in such circumstances as are presented in this case, are unable to make a return or to go to the assessors. A different conclusion assumes an intention by the legislature to exercise arbitrary power, the validity of which would be questionable.

If such had been the intent, we should expect to see the words "omit" or "fail" in the statute rather than the less definite word "neglect". The State is only entitled to tax all ratable estate. The required return is a means of securing a disclosure of his taxable property from the taxpayer. The taxpayer in this case, without fault, was unable to make a return. This was not a neglect in the meaning of that term in the statute. The assessors did not receive the aid of a return in making their assessment but their duty was unchanged, and that was to get such information as they could and proceed to make the assessment. With full knowledge of the exact amount of the ratable estate, the assessors without any justification have made an arbitrary and excessive assessment. For this action they had no authority in the law and the plaintiffs are entitled to recover in the action at law No. 6153 the amount paid in excess of the proper tax, which it is admitted is the sum of $6,000.

In the petition numbered Ex. 6152 the decision of this court is that the petition should be dismissed and the papers

with the decision of this court certified thereon are sent back to the Superior Court with direction to enter final judgment upon said decision dismissing said petition.

In the action numbered Ex. 6153 the decision of this court is for the plaintiffs for the sum of $6,000 and the papers with the decision of this court certified thereon are sent back to the Superior Court with direction to enter final judgment upon said decision.

*Sheffield & Harvey*, for petitioners and plaintiffs.

*Jeremiah P. Mahoney, Jeremiah A. Sullivan,* for respondents and defendant.