## NEW HAMPSHIRE INSURANCE COMPANY

### v.

### Norman ROUSELLE.

### No. 98–49–Appeal.

Supreme Court of Rhode Island.

July 7, 1999.

Kevin M. Daley, Warwick, for Plaintiff.

Bernard Patrick Healy, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## O P I N I O N

PER CURIAM.

This case came before the Supreme Court on April 12, 1999, pursuant to an order directing both parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we conclude that cause has not been shown. Accordingly, we shall decide the issues raised on appeal at this time.

In 1983, the defendant, Norman Rouselle (Norman or defendant), purchased a 1983 Buick automobile for his mother, Katherine Rouselle (Katherine). The vehicle was registered in his mother's name and was insured by the plaintiff, New Hampshire Insurance Company (New Hampshire). Katherine, who died in July of 1984, was the named insured and driver listed on the policy. The evidence introduced at trial established that following his mother's death, Norman continued to make payments to plaintiff ostensibly renewing the policy of insurance on Katherine's behalf. It was also disclosed that Norman signed and purported to renew the registration for his mother's vehicle after her death.

On March 31, 1986, approximately eighteen months after his mother's death, Norman was involved in an automobile collision while driving the Buick. The other driver involved in the accident was insured through American Universal Insurance Company which subsequently became insolvent. Because of this insolvency, Norman sought to recover through the uninsured motorist provisions of his late mother's insurance policy issued by New Hampshire. New Hampshire denied coverage and filed an action for declaratory relief alleging that the posthumous payment of premiums and Norman's claim for recovery following the 1986 collision amounted to misrepresentation.

In 1997, New Hampshire amended its complaint for declaratory relief by adding a second count that alleged the policy renewals after Katherine's death were void at the time of the collision since Norman was neither covered under the terms of the policy nor was he an authorized legal representative of his mother's estate. Norman answered the amended complaint and asserted the affirmative defense that the relevant statute of limitations barred the action. The trial justice did not accept Norman's argument and determined that, pursuant to Rule 15(c) of the Superior Court Rules of Civil Procedure, the count would stand because it arose out of the original transaction and therefore related back to the date of the original pleading.

The case was heard before a justice of the Superior Court without the intervention of a jury. A major aspect of the dispute centered on the inability of either side to produce the original, or a copy of the insurance policy, although a copy of the renewal and premium notice were introduced into evidence. New Hampshire also introduced the deposition testimony of a representative of Insurance Services Of-

fice (ISO), a business that prepares standard-form insurance policies for its insurer clients and files them with departments of business regulations in various states. New Hampshire entered an insurance policy into evidence that was approved by the Rhode Island Department of Business Regulation and apparently, identical to the policy that it would have issued to Katherine in 1983. Notwithstanding Norman's objection on best evidence grounds, the trial justice admitted the ISO policy. John Glas, a former officer for New Hampshire, also testified that New Hampshire used ISO exclusively to prepare its policy forms. Glas also testified that the names of those persons listed on the renewal notices corresponded to the names of the insureds and the authorized drivers listed on the policy.

The trial justice dismissed the misrepresentation claim finding no intentional misrepresentation by Norman. However, he rendered judgment for New Hampshire on the amended breach of contract claim, concluding that there was no liability under the policy since Norman was not an insured under the policy. He found that the policy was void because Katherine had died almost two years before the collision, and no evidence was produced that the legal representative of her estate had authorized the automobile registration after her death. Thus, there could not have been an active insurance policy. He further found that Norman did not qualify as a proper claimant under the uninsured motorist provisions of the policy since there was no policy in existence at the time of the collision. In sum, the trial justice found that there was no valid contract in the absence of a properly renewed policy and that the contract was void, not merely voidable.

A judgment was entered declaring that Norman was not an insured under the policy, that coverage under the policy was terminated at the expiration of the policy term in October, 1984, and that the first and second renewals of the policy were void.

■ On appeal, Norman challenges the allowance of count two of the amended complaint. Although he acknowledges that Rule 15 provides for liberal amendments to pleadings, Norman suggests that the trial justice erred in finding that the claim related back to the same act or transaction that gave rise to the original complaint. We disagree and conclude that the amended complaint was proper since Norman was not a covered person under the policy inasmuch as he was not the legal representative of his mother's estate. Both counts in the complaint referred to either a void or voidable contract and thus fall within the provisions of Rule 15(c), which allows the amendment to relate back to the date of the original pleading.

■ The second assignment of error concerns the admissibility of the ISO policy. In essence, Norman argues that New Hampshire failed to demonstrate that the ISO policy was the same as the policy that was issued to Katherine and thus, its admission violated Rules 1004 and 901 of the Rhode Island Rules of Evidence. New Hampshire challenged this argument on waiver grounds and the trial justice agreed, concluding that the issue was waived because Norman failed to properly object at the time the policy was marked as a full exhibit. We note that Norman has disputed the issue of waiver; however, we need not reach this issue because it is our determination that the admission of the policy did not implicate the best evidence rule.

We are cognizant that both sides to this dispute were in possession of the actual insurance policy at some point in time and neither side was able to produce a copy. Further, we have long held that the admission of evidence rests in the sound discretion of the trial justice and will not be disturbed absent a showing of an abuse of that discretion. *Bourdon's, Inc. v. Ecin Industries, Inc.*, 704 A.2d 747, 758 (R.I.

1997); *see also Soares v. Nationwide Mutual Fire Insurance Co.,* 692 A.2d 701, 701–02 (R.I.1997). Rule 1002 provides that the contents of a writing must be proven by an original writing. Rule 1004 provides an exception to Rule 1002 and permits evidence of the contents of a writing to be introduced if the original writing has been lost or destroyed and the proponent of the evidence has not disposed of or destroyed the original in bad faith. In the case at bar, the policy was unquestionably lost by both parties and there has been no evidence of complicity on the part of the insurer in its disappearance. Therefore, we conclude that a specimen policy accompanied by testimony sufficient to establish its likeness to the original is acceptable for admissibility purposes.

Norman next challenges the finding that the policy was issued to Katherine only and therefore, his claim was barred by the provisions of the alleged policy. There was uncontradicted evidence that the declarations page introduced into evidence invariably lists the named insured and the authorized driver under the policy and that Norman's name was not among them. Thus, we conclude that the trial justice did not err in holding that Katherine was the only insured under the policy.

Finally, Norman raises the issue of the missing policy and asserts that the failure to produce the actual insurance policy issued to Katherine creates an insurmountable inference of spoliation against the insurer that ought to be fatal to New Hampshire's claim in the context of this case. We disagree and note that the doctrine of spoliation merely *permits* an inference that the destroyed evidence would have been unfavorable to the despoiler. In this case both parties are guilty of losing the insurance policy. Therefore, the trial justice did not abuse his discretion in declining to draw an adverse inference against plaintiff and refusing to hold that the loss of the policy was fatal to New Hampshire's case.

In conclusion, for the reasons stated above, we deny and dismiss the defendant's appeal and affirm the judgment of the Superior Court.