**GRANOFF REALTY II LIMITED PARTNERSHIP**

v.

**Thomas ROSSI, in his capacity as Tax Assessor for the City of Providence.**

No. 2002–344–Appeal.

Supreme Court of Rhode Island.

Oct. 29, 2003.

Richard A. Licht, Thomas M. Robinson, Michael P. Jolin, Providence, for Plaintiff.

Caroline Cole Cornwell, Providence, for Defendant.

Present: WILLIAMS, C.J.,
FLANDERS, GOLDBERG, FLAHERTY,
and SUTTELL, JJ.

## OPINION

PER CURIAM.

This is a commercial property owner's challenge to a municipal tax assessment. The plaintiff, Granoff Realty II Limited Partnership (Granoff), appeals from the entry of summary judgment in favor of the defendant, Thomas Rossi, in his capacity as tax assessor for the City of Providence (city). Because Granoff failed to file a signed and notarized account valuing the commercial real estate it owned in the city for the tax assessment in question (as of December 31, 1998), we hold that, under the circumstances of this case, it was not entitled to invoke the jurisdiction of the Superior Court to remedy the city's alleged overassessment of its property.

At all times pertinent to this appeal, Granoff owned an office building known as the Turks Head Building, together with related real estate in the city's financial district. The property consisted of lots 121, 126, and 87 within plat 20. On June 5, 1997, Granoff purchased the property for $4.2 million from the Niles Company, Inc. For the tax assessment in question, the city tax assessor's office assessed plaintiff's property at $11,684,200. On June 30, 2000, Granoff filed a complaint in Superior Court pursuant to G.L.1956 § 44-5-26, seeking judicial review of the city's tax assessments of its city property for the tax

year in question.[1] Eventually, the city moved for summary judgment, alleging that Granoff's account in this matter was inadequate because it had failed to sign or notarize the account, as required by § 44–5–16. Granoff opposed the motion, arguing that although it had not signed or notarized the account for the challenged tax assessment, it substantially complied with the requirements of § 44–5–16. Granoff also argued that the tax assessor's acceptance of the account constituted a waiver and that the tax assessor, therefore, was estopped from pleading that the account was incomplete because Granoff prejudicially relied upon the city's acceptance of the account. On appeal, it also suggests that, under the circumstances of this case, the law did not require it to file such an account because the city assessed its property at a value that exceeded the value at which the city assessed this same property in its last preceding assessment.

Relying on *Van Alen v. Stein*, 119 R.I. 347, 376 A.2d 1383 (1977), the motion justice concluded that the account that Granoff filed was not in compliance with § 44–5–16. She entered an order granting the city's motion on May 3, 2002, and entered a judgment in favor of the city on that same day. Granoff thereafter filed a timely notice of appeal. After a prebriefing conference, a single justice of this Court ordered the parties to show cause why we should not resolve this appeal summarily.

Because they have not done so, we proceed to decide the appeal at this time.

■ In its appeal, Granoff argues, as it did below, that it substantially complied, in good faith, with the requirements of § 44–5–16. It suggests that the account it filed fulfilled the purpose and intent of § 44–5–16 because it placed the city on notice that Granoff objected to the assessment. Granoff also contends that it timely filed the account, which was identical to the signed and notarized account that it filed the previous year. Additionally, Granoff maintains, its failure to sign the account did not prejudice the city. In support of this contention, Granoff cites *Bishop v. Tax Assessors of Newport*, 47 R.I. 351, 133 A. 342 (1926), for the proposition that when innocent omissions are made in an account that the taxpayer filed in good faith, the court should allow the taxpayer to proceed with an action for relief from the assessment.

The facts of this case, however, are markedly different from those in *Bishop*. In *Bishop*, 47 R.I. at 352, 133 A. at 343, the taxpayer was ill and physically unable to appear before the assessors to swear that the account was a true and full valuation of her property. The Court held that the Legislature did not intend to require "that which is impossible to do." *Id.* at 356, 133 A. at 344. Here, Granoff does not suggest that it was impossible or even difficult for it to file the statutorily required account.[2] Thus, *Bishop* affords no

---

1. The Superior Court consolidated this action (C.A. No. 00–3482) with three other tax appeals that Granoff filed with respect to tax assessments for other years: namely, C.A. No. 99–0562, C.A. No. 99–1464, and C.A. No. 01–2062. After the Superior Court granted summary judgment in this action, these other cases proceeded to trial, and a judgment entered in favor of Granoff. The city filed an appeal which this Court denied on May 30, 2003. *See Granoff Realty II Limited Partnership v. Rossi*, 823 A.2d 296 (R.I.2003). That appeal concerned the 1997 and 1999 tax as-

sessments, whereas this appeal concerns only the 1998 tax assessment. *Id.* at 297.

2. Significantly, the statute allows appointment of an agent for that purpose. General Laws 1956 § 44–5–16(a) provides: "In case a taxpayer is, because of illness or absence from the state, unable to make the required oath to his or her account * * * the taxpayer may * * * appoint an agent to make oath to his or her account within the time prescribed by the assessors * * *."

solace to Granoff because the various obstacles to the taxpayer's filing of a proper account in that case are absent from this one.

Granoff also argues that *Van Alen* is not controlling because it is factually distinguishable from this situation. Additionally, Granoff maintains that in *Rock Ridge Ltd. v. Assessor of Taxes of Woonsocket,* 667 A.2d 778, 779 (R.I.1995) (per curiam), this Court limited the holding in *Van Alen* when it stated, "[w]e shall take this opportunity to state that to hold that a court is deprived of subject-matter jurisdiction because a litigant fails to satisfy one of the conditions precedent to bringing an action is an incorrect statement of law. Cases so stating are no longer controlling." Granoff suggests that neither defendant nor the trial court were aware of this limitation on the *Van Alen* holding.

The city counters that the trial justice properly granted summary judgment. It contends that a taxpayer must comply with the dictates of § 44–5–16 as a prerequisite to challenging a tax assessment. Pursuant to this Court's holding in *Van Alen,* the city argues, the failure to submit an account under oath deprives a taxpayer of its remedy for an alleged overassessment because the taxpayer has improperly invoked the subject-matter jurisdiction of the court to provide such a remedy without first satisfying the statutory condition precedent of filing a signed and sworn account.

Section 44–5–16, which is entitled "Oath to account brought in—Remedies after failure to bring in account—Effect on proration—" sets forth certain requirements for filing an account and provides in pertinent part:

"(a) Every person bringing in any account shall make oath before some notary public or other person authorized to administer oaths in the place where the oath is administered that the account by

that person exhibited contains, to the best of his or her knowledge and belief, a true and full account and valuation of all the ratable estate owned or possessed by him or her; and whoever neglects or refuses to bring in the account, if overtaxed, shall have no remedy there—for, except as provided in §§ 44–4–14, 44–4–15, 44–5–26, 44–5–31, and 44–9–19, 44–9–24. In case a taxpayer is, because of illness or absence from the state, unable to make the required oath to his or her account within the time prescribed by law, the taxpayer may, in writing, appoint an agent to make oath to his or her account within the time prescribed by the assessors and the agent shall at the time of making the oath append his or her written appointment to the account, and for all purposes in connection with the account the taxpayer is deemed to have personally made the oath."

In this case, although Granoff filed an account, that account was neither signed nor notarized in accordance with § 44–5–16.

In *Van Alen,* 119 R.I. at 362, 376 A.2d at 1391, which is factually similar to this case, the Court held that the taxpayers' failure to have the account notarized resulted in an inadequate account and, therefore, the taxpayers were "not entitled to judicial review of their claim of overassessment." In that case, the plaintiffs' attorney had filed, on their behalf, an account of their property in response to a 1972 tax assessment. *Id.* at 352, 376 A.2d at 1386. The plaintiffs, however, had not signed the account under oath nor did they include a written appointment authorizing an agent to make such an account, as § 44–5–16 requires. *Van Alen,* 119 R.I. at 361, 376 A.2d at 1390. With respect to that particular assessment, "the trial justice ruled that since the account did not meet the

statutory requirements for a sworn, true and accurate account of all ratable estate possessed by the taxpayer, petitioners were not entitled to relief." *Id.* at 353, 376 A.2d at 1386. On appeal, this Court noted that the account, in addition to not being notarized, also did not contain "a significant portion of their taxable property." *Id.* at 361, 376 A.2d at 1390. The plaintiffs argued that the omission of property was "insubstantial" and, therefore, the court should have deemed the account to be adequate. *Id.* at 361–62, 376 A.2d at 1390. This Court, however, held that—even accepting that the taxpayers' omission of certain property was inconsequential—the requirements contained in § 44–5–16 (that the taxpayer either notarize the account or file a written appointment authorizing an agent to make the account and oath) could not be ignored so easily. *Id.* at 361–62, 376 A.2d at 1390–91. The Court stated: "[N]othing in that section confers authority upon the judiciary to ignore the statutory requirement that the list be accompanied by either a personal oath or a written appointment." *Id.* at 362, 376 A.2d at 1391.

Moreover, contrary to plaintiff's assertion, this Court in *Rock Ridge* did not limit its previous holding in *Van Alen.* Rather, in *Rock Ridge,* 667 A.2d at 779, we noted that the trial court misstated the law in holding that it "had 'no jurisdiction' to hear the matter on the basis of petitioner's failure to file an amended account." Rather, pursuant to the statute, the Superior Court would always retain subject-matter jurisdiction to hear tax-abatement claims. *Id.* But, "[t]here is a critical distinction between the complete absence of jurisdiction over the subject matter and the refusal to exercise that jurisdiction because it was not properly invoked." *Id.* at 780. In *Rock Ridge,* we concluded that, by neglecting to file an account, the petitioner failed to properly invoke the court's jurisdiction

by satisfying a condition precedent to challenging a tax assessment. *Id.* Consequently, this holding in no way limits *Van Alen* because the Court in *Van Alen* did not state that the Superior Court had "no jurisdiction" to hear the case. Rather, *Van Alen,* 119 R.I. at 362, 376 A.2d at 1391, simply held that the taxpayers' failure to file a proper account deprived them of their right to obtain judicial relief from the assessment.

Similarly, in *Wickes Asset Management, Inc. v. Dupuis,* 679 A.2d 314, 318 (R.I. 1996), we reiterated that an account, which contained no oath indicating that it was "a true and exact account," did not meet the statutory requirements and, therefore, was inadequate as a matter of law.

Like the accounts at issue in *Van Alen* and *Wickes,* the account that Granoff provided failed to satisfy the statutory preconditions for challenging a tax assessment, as set forth in § 44–5–16. As a result, the plaintiff's account was not the "true and exact account" that the statute required. Sections 44–5–15 and 44–5–16. Because Granoff failed to satisfy the statutory requirements, the Superior Court could not afford it relief under § 44–5–16. Therefore, we hold, the motion justice properly granted defendant's motion for summary judgment.

■ Granoff next asserts that defendant, by initially accepting the account, waived its claim that plaintiff neither signed nor notarized the account. It suggests that defendant's acceptance of the account estopped it from asserting that the account was inadequate. It is inequitable, Granoff insists, to permit the city to allege that the account was inadequate after the city accepted it for filing.

These arguments, however, are not persuasive because by merely accepting the account for filing, the city did not thereby

determine or signify to the taxpayer that the account was in proper form. In *Chase v. Bouchard,* 671 A.2d 794, 796 (R.I.1996), this Court held that when the defendant had failed to plead at trial that the plaintiff had not filed an account pursuant to § 44–5-15 such a failure could constitute waiver of that defense on appeal. We said that even though "the filing of an account pursuant to statute was * * * a condition precedent to allowing the petitioner to seek relief by means of a petition for assessment of damages," still "[l]ike any condition precedent, it must be pleaded and must be called to the attention of the trial justice prior to trial and in accordance with Rule 9(c) of the Superior Court Rules of Civil Procedure." *Chase,* 671 A.2d at 796.

Unlike the defendant in *Chase,* the city raised the taxpayer's failure to file a proper account in its answer and then filed a motion for summary judgment before trial and in accordance with Rule 9(c). Applicable law did not oblige the city to reject this unsigned and unsworn account when Granoff tendered it for filing on pain of losing its right to challenge its propriety in the event Granoff sought to litigate the tax assessments. Thus, waiver and estoppel are not applicable here because the city timely raised the defense of an inadequate account in its pleadings and also via a pretrial motion. The city's conduct in this respect, therefore, did not prejudice Granoff, because Granoff had no right to presume that the city's mere acceptance of the account for filing signified that the city concluded its account conformed to applicable legal requirements.

■ Granoff also contends that the municipal-property-tax statute is unconstitutional. It argues that "[d]efendant's practice violates the Due Process Clause because it [deprives] the taxpayer of an opportunity to challenge his unilaterally-imposed assessment." Granoff suggests that it is unconstitutional to impose a tax assessment that the taxpayer has no ability to challenge because it did not file a "proper" account. Relying on *Central of Georgia Railway Co. v. Wright,* 207 U.S. 127, 28 S.Ct. 47, 52 L.Ed. 134 (1907), Granoff argues "a statute cannot deprive the taxpayer of an opportunity to be heard for failure to file an account."

Granoff, however, has not properly preserved this issue for this Court's review because it did not notify the Attorney General of any constitutional challenge to the statute and it did not raise these constitutional issues before the Superior Court. Rule 24(d) of the Superior Court Rules of Civil Procedure requires:

> "When the constitutionality of an act of the legislature is drawn in question in any action to which the state or an officer, agency, or employee thereof is not a party, the party asserting the unconstitutionality of the act shall serve the attorney general with a copy of the proceeding within such time to afford the attorney general an opportunity to intervene."

This Court has frequently held that "no challenge to the constitutionality of a state statute or municipal ordinance may be validly presented unless the Attorney General is 'served with a copy of the proceeding.'" *Flanagan v. Wesselhoeft,* 765 A.2d 1203, 1211 (R.I.2001) (quoting § 9–30–11);[3] *accord Kingstown Mobile Home Park v. Strashnick,* 774 A.2d 847, 852–53 (R.I. 2001) (citing *Crossman v. Erickson,* 570 A.2d 651, 654 (R.I.1990)).

---

**3.** General Laws 1956 § 9–30–11 provides in pertinent part: "In any proceeding which involves the validity of a municipal ordinance or franchise * * * the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard."

Relying on *Retirement Board of Employees' Retirement System of Providence v. City Council of Providence*, 660 A.2d 721, 726 (R.I.1995), Granoff argues that we should consider its due-process argument even though it has not provided notice of its constitutional challenge to the Attorney General's office. But as important as this case is to Granoff, it does not "address issues of substantial importance * * * to all the taxpayers of the city of Providence." *Id.* at 726. Thus, we are unwilling to overlook its failure to comply with Rule 24(d) and § 9–30–11.

Nevertheless, Granoff insists that in *Wickes* the plaintiff raised the same constitutional challenge as it is raising here. In that case, the plaintiff, relying on *Central of Georgia Railway Co.*, argued that §§ 44–5–15 and 44–5–26 were unconstitutional on due-process grounds. *Wickes*, 679 A.2d at 319. Upon review, this Court ruled that the trial justice "did not articulate whether she considered Wickes's contention that §§ 44–5–15 and 44–5–26 deny due process of law as precluding a judicial challenge of tax assessments by the taxpayer who fails to file an account." *Wickes*, 679 A.2d at 319. Therefore, this Court remanded that matter for the trial justice "to consider the due-process implications, if any, which *Central* has on §§ 44–5–15 and 44–5–26." *Wickes*, 679 A.2d at 319. Unlike the plaintiff in *Wickes*, however, Granoff did not raise this constitutional issue before the Superior Court. In addition, because it did not serve the Attorney General with a copy of its complaint—thereby allowing that constitutional officer an opportunity to be heard below—this issue is not properly before us.

In its final claim of error, Granoff also maintains that, pursuant to § 44–5–26(c), a taxpayer is not precluded from challenging a tax assessment for failure to submit an account when "that person's real estate has been assessed at a value in excess of the value at which it was assessed on the last preceding assessment day." Section 44–5–26(c)(1). It posits that because the challenged assessment valued its property at $11,684,200 and that value was greater than the property value for the previous assessment ($4,200,000), it was under no obligation to submit an account. The city, however, counters that it assessed the property at the same value for both of these years but that the Superior Court later concluded that the value of Granoff's property as of December 31, 1997, was only $4,200,000. *Granoff Realty II Limited Partnership*, 823 A.2d at 297 (affirming the Superior Court judgment on this point). In addressing this issue, we shall assume without deciding that Granoff is correct in contending that the property value for the challenged assessment was greater than the property value used in the assessment for the previous tax year and that Granoff therefore satisfied this element of § 44–5–26(c)(1) in attempting to qualify for one of the statutory exceptions to the account-filing requirement.[4]

Section 44–5–26(c) states:

---

4. In response to the city's motion for summary judgment, Granoff did not argue that the provisions of § 44–5–26(c) applied to this situation and, therefore, it was excused from any account-filing requirement. At that time, the city had assessed the property at $11,684,200 for both the 1997 and 1998 tax years. While this appeal was pending, however, this Court affirmed the Superior Court's determination that the 1997 value of the property was $4,200,000. *Granoff Realty II Limited Partnership*, 823 A.2d at 299–301. Based on this ruling, Granoff argues that the provisions of § 44–5–26(c) relieved it of having to file a sworn account because the assessed value of the property for 1998 exceeded the property value for the 1997 assessment, as determined by this Court. We reject this contention because even if the assessed property values for 1998 were higher than those for the

"Provided, however, that in case the person has not filed an account, or filed an appeal first within the local tax board of review, that person shall not have the benefit of the remedy provided in this section and in §§ 44–5–27–44–5–31, unless (1) that person's real estate has been assessed at a value in excess of the value at which it was assessed on the last preceding assessment day, whether then owned by that person or not, and has been assessed, if assessment has been made at full and fair cash value, at a value in excess of its full and fair cash value, or, if assessment has purportedly been made at a uniform percentage of full and fair cash value, at a percentage in excess of the uniform percentage, or (2) the tax assessed is illegal in whole or in part; and that person's remedy is limited to a review of the assessment on the real estate or to relief with respect to the illegal tax, as the case may be." (Emphasis added.)

"Questions of law and statutory interpretation * * * are reviewed *de novo* by this Court." *Nassa v. Hook–SupeRx, Inc.*, 790 A.2d 368, 370 (R.I.2002) (quoting *Heflin v. Koszela*, 774 A.2d 25, 31 (R.I. 2001)). "When construing a statute, 'this [C]ourt has the responsibility of effectuating the intent of the Legislature by examining a statute in its entirety and giving the words their plain and ordinary meaning.'" *Id.* (quoting *Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1049 (R.I.1994)). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996).

Based on the plain language of the statute, we hold that § 44–5–26(c) does not permit a taxpayer to challenge a tax assessment without filing a proper account simply because the challenged tax year's assessment was greater than the preceding year's assessment. Rather, § 44–5–26(c) provides in pertinent part that a taxpayer must file a sworn account to contest an assessment of real estate "unless * * * that person's real estate has been assessed at a value in excess of the value at which it was assessed on the last preceding assessment day * * * *and* [the property] has been assessed * * * at a value in excess of its full and fair cash value." (Emphasis added.) The Legislature's use of the word "and" indicates that it intended to have these two requirements apply conjunctively; therefore, the taxpayer must satisfy both of them to avoid the obligation of filing a sworn account. Other exceptions to the account-filing requirement apply if the property's tax assessment exceeded the uniform percentage of the full and fair cash value used to assess other taxable property in the municipality, or if the taxpayer alleges and proves that the assessment was illegal in whole or in part.

Here, in response to the summary-judgment motion, Granoff provided no evidence that the challenged tax assessment exceeded the property's full and fair cash value; that the city assessed its property at a percentage that exceeded the uniform percentage of the city's overall tax assessment; or that the assessment was illegal in whole or in part. Pursuant to § 44–5–26(c), merely alleging that the municipality assessed the property "at a value

previous year, Granoff failed to show that it met the other evidentiary requirements set forth in § 44–5–26(c).

in excess of the value at which it was assessed on the last preceding assessment day" was insufficient for the taxpayer to qualify under one of the statutory exceptions that relieve the taxpayer from § 44–5–26(a)'s "no remedy" sanction for failing to file a proper account. Like other litigants, a taxpayer cannot rest upon mere allegations and pleadings or the suggestion that it would prove its overassessment theory at trial when attempting to fend off a summary-judgment motion. Rather, to show that it qualified for one of the statutory exceptions to the account—filing requirement, it had to introduce evidence—through, for example, affidavits, interrogatory answers, or deposition transcripts—that the challenged tax assessment exceeded the full and fair value of the property for the tax year in question, that it exceeded the uniform percentage that the city used in assessing the city's other taxable property, or that it was illegal in whole or in part. This it failed to do.

For these reasons, we conclude, the motion justice properly granted summary judgment. Thus, we affirm the judgment in favor of the city.