**HARVARD PILGRIM HEALTH CARE OF NEW ENGLAND, INC.**

v.

**Thomas ROSSI, in his capacity as Tax Assessor of the City of Providence.**

No. 2003–170–Appeal.

Supreme Court of Rhode Island.

May 6, 2004.

Richard J. Welch, for Plaintiff.

Caroline Cole Cornwell, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

PER CURIAM.

The City of Providence (the city or defendant) appeals from a Superior Court judgment awarding Harvard Pilgrim Health Care (Harvard Pilgrim or plaintiff) $484,907.46, plus $93,580.49 in interest and costs, for overassessing taxes on its ratable, tangible personal property for tax year 2000. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised on appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and we affirm the judgment entered in the Superior Court.

### Facts and Travel

After unsuccessfully appealing assessments to the Providence Board of Tax Assessment Review, Harvard Pilgrim filed four separate actions in Superior Court alleging that the city valued its ratable personal property for tax years 1997, 1998, 1999, and 2000, respectively, in excess of fair market value in violation of G.L.1956 § 44–5–12. The four actions were consolidated for trial and heard before a trial justice without the intervention of a jury. After several days of hearings and the submission of post-trial memoranda, the trial justice found in favor of the city for three of the years, and held in favor of Harvard Pilgrim for tax year 2000. Judgment was entered on March 26, 2003, and the city timely appealed.

For tax year 2000, the city valued Harvard Pilgrim's ratable, tangible property at $9,183,600, and assessed $770,136.70 in taxes, which Harvard Pilgrim paid in four quarterly installments. Harvard Pilgrim, however, asserted that this valuation exceeded fair market value in violation of § 44–5–12(a), which provides in pertinent part:

"All property subject to taxation shall be assessed at its full and fair cash value or at a uniform percentage of its value, not to exceed one hundred percent (100%),

to be determined by the assessors in each town or city * * *."

Harvard Pilgrim proffered evidence at trial that the fair market value of its tangible personal property as of December 31, 1999, was $3,401,225, and therefore the correct tax amount for tax year 2000 was $285,229.24. Harvard Pilgrim thus sought a tax rebate of $484,907.46.

Thomas Rossi (Rossi), the named defendant in his capacity as the city's then-tax assessor, testified that the formula the city used to establish fair market value for items of tangible personal property was "acquisition cost minus depreciation." He further testified that his office used the information supplied by the taxpayer on the annual return and applied various depreciation schedules for furniture and equipment, computers, and leasehold improvements. The city conceded at trial that its acquisition cost minus depreciation approach may not reflect precise fair market value; nevertheless, the city argued, it treats taxpayers uniformly and its methodology is the best approximation of fair market value that can be ascertained while achieving that uniformity.

The trial justice held that although the city's formula for determining fair market value was not, in and of itself, an illegal method of tax assessment, the city's valuation of Harvard Pilgrim's tangible personal property for tax year 2000 did not properly reflect the fair market value of Harvard Pilgrim's ratable assets. The trial justice found in favor of Harvard Pilgrim for tax year 2000 and entered judgment of $484,907.46, together with interest and costs.

Three months after the close of the evidence, but before the trial justice issued his written decision, the city filed a motion for judgment on partial findings pursuant to Rule 52(c) of the Superior Court Rules of Civil Procedure, alleging that Harvard Pilgrim's failure to file a "true and exact account" precluded judicial review as a matter of law. Without specifically addressing the city's Rule 52(c) argument, the trial justice denied the motion, opining that it was an integral part of his analysis and subsumed in his decision.

### Jurisdiction of the Superior Court

On appeal, the city argues first that the annual account Harvard Pilgrim filed on January 31, 2000, was insufficient under §§ 44–5–15 and 44–5–16 to vest the Superior Court with jurisdiction. The city asserts that Harvard Pilgrim's submitted account was not a "full and exact account and valuation" of its property and, therefore, that Harvard Pilgrim failed to satisfy a condition precedent to judicial review.

■■■ It is well established that the Superior Court has subject-matter jurisdiction to hear tax abatement claims. *Granoff Realty II Limited Partnership v. Rossi*, 833 A.2d 354, 358 (R.I.2003) (per curiam) (Granoff Realty). To invoke the court's jurisdiction properly, however, the petitioner must satisfy the statutory preconditions as set forth in § 44–5–16. *Granoff Realty*, 833 A.2d at 358. We have determined that the timely filing of an adequate account and the notarization of the account are both conditions precedent that must be met to invoke the jurisdiction of the court. *Wickes Asset Management, Inc. v. Dupuis*, 679 A.2d 314, 318 (R.I. 1996).

■■■ It is firmly established that when a defendant fails to plead at trial that a plaintiff did not file an adequate account pursuant to § 44–5–15, "such a failure could constitute waiver of that defense on appeal." *Granoff Realty*, 833 A.2d at 359 (citing *Chase v. Bouchard*, 671 A.2d 794, 796 (R.I.1996)). "[L]ike any condition precedent, it must be pleaded and must be

called to the attention of the trial justice prior to trial and in accordance with Rule 9(c) of the Superior Court Rules of Civil Procedure." *Granoff Realty*, 833 A.2d at 359 (quoting *Chase*, 671 A.2d at 796). In this case, the city did not raise the argument asserting an inadequate account until three months after the hearing, when it filed a motion to amend its answer to include it as an affirmative defense and also filed a Rule 52(c) motion asserting the failure of Harvard Pilgrim to meet its statutory obligations. The trial justice granted the motion to amend, noting that Harvard Pilgrim had not filed an objection.

■ Although Harvard Pilgrim did object to the timeliness of the city's Rule 52(c) motion before the trial justice gave his decision, it has not raised a similar argument on appeal. We will proceed, therefore, to address the merits of the city's contention that Harvard Pilgrim failed to satisfy the statutory requirement of filing a "true and exact" account.

## The Sufficiency of Harvard Pilgrim's Annual Account

■ Because the essential facts are not in dispute, the issue before us is solely one of statutory construction. This Court reviews questions of statutory interpretation *de novo*. *State v. Fritz*, 801 A.2d 679, 682 (R.I.2002) (citing *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates*, 763 A.2d 1005, 1007 (R.I. 2001)). When the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning. *In re Chaselle S.*, 798 A.2d 892, 894 (R.I.2002) (per curiam) (citing *Cummings v. Shorey*, 761 A.2d 680, 684 (R.I. 2000)). When a statute is ambiguous, however, we must apply the rules of statutory construction and examine the statute in its entirety to determine the intent and

purpose of the Legislature. *Direct Action for Rights and Equality v. Gannon*, 819 A.2d 651, 659 (R.I.2003).

Section 44–5–15 provides that an account must include:

> "*a true and exact account* of all the ratable estate owned or possessed by that person or body, *describing and specifying the value* of every parcel of the real and personal estate, together with the additional information that may be prescribed by the assessors relative to the ratable estate as may be contained in any corporation * * * tax return * * *." (Emphases added.)

Section 44–5–16(a) provides in pertinent part:

> "Every person bringing in any account shall make oath before some notary public * * * that the account by that person exhibited contains, to the best of his or her knowledge and belief, a true and full account and valuation of all the ratable estate owned or possessed by him or her; and whoever neglects or refuses to bring in the account, if overtaxed, shall have no remedy therefor, except * * *."

Here, the account submitted by Harvard Pilgrim consisted of a four-page "Annual Return" form furnished by the city, along with a detailed computer printout entitled "Net Book Value Report" appended to the form. The printout consists of an itemized list of tangible personal property, including acquisition cost, year of acquisition, and depreciation amount. Our inquiry is to determine whether this account satisfied the statutory requirement.

■ The city argues that strict compliance with the statute is required. This Court has required strict compliance for two separate, clear, and unambiguous directives of the statute: that an account be submitted and that the account be notarized. *See Granoff Realty*, 833 A.2d at 358

(holding that "[n]othing in [§ 44–5–16] confers authority upon the judiciary to ignore the statutory requirement that the list be accompanied by either a personal oath or a written appointment"). In the case at hand, the city does not question that Harvard Pilgrim submitted a notarized account; rather, its only contention is that it was not a "true and exact account" in conformance with § 44–5–15.

This Court has determined that the legislative intent is to require such sufficiency in the description of the personal property as to be of assistance to the assessor in assessing a tax against each item. *Sayles Finishing Plants, Inc. v. Toomey*, 95 R.I. 471, 481, 188 A.2d 91, 97 (1963). A generic classification is insufficient. *See id.* (citing *Ewing v. Tax Assessors of Jamestown*, 93 R.I. 372, 375–76, 176 A.2d 69, 71–72 (1961)). The taxpayer also must present reasons for why its property is not taxable. *See Ewing*, 93 R.I. at 376, 176 A.2d at 72 (listed reason of "[n]ot taxable" was insufficient).

The account at issue was filed by Harvard Pilgrim on January 31, 2000. Using forms provided by the city assessor's office, it itemized nearly 9,000 items of tangible personalty, including computer equipment, inventory, leasehold improvements, furniture, and office equipment. The net book value report listed the acquisition cost and current depreciation for each item.

The city argues that this account was inadequate in that it failed to provide the age, condition and all other related information with respect to each of the nearly 9,000 items, such that the assessor might determine the fair market value. Recognizing that the "purpose of requiring a true and exact account * * * is to aid the assessors in performing their duty to make a proper assessment," *Ewing*, 93 R.I. at 375, 176 A.2d at 71, the city maintains that Harvard Pilgrim's account was too vague as a matter of law to sustain an appeal to the Superior Court.

The city's rationale is somewhat specious in light of the practice employed by the assessor's office. It was firmly established at trial that the only figure that the city used in determining the fair market value of any item of ratable property was its acquisition cost. The city then applied its own depreciation schedule to ascertain valuation. The trial justice did not find this methodology illegal. Yet, it is abundantly clear that no matter how much detail Harvard Pilgrim might have provided, the only factor that would have aided the assessor was the acquisition cost.

We are persuaded that the account filed by Harvard Pilgrim on January 31, 2000, was indeed in reasonable compliance with the provisions of §§ 44–5–15 and 44–5–16. *See Ewing*, 93 R.I. at 376, 176 A.2d at 71. We disagree with the city's contention that an exhaustive analysis of each item is required to invoke the statutory review process. Here, Harvard Pilgrim timely provided an itemized list of nearly 9,000 items of ratable personal property, listing acquisition cost, in-service date, depreciation, and net book value of each item. The provision of more detailed information clearly would not have "aided" the assessor in this situation. Rather, the purpose of submitting any information other than acquisition cost was completely frustrated by the methodology that the city employed. We conclude, therefore, that Harvard Pilgrim did file a "true and exact account * * * describing and specifying the value" of all its ratable personal estate sufficient to invoke the statutory appeal process to challenge the city's assessment.

We now proceed to review the second issue that the city raised on appeal.

## The Competency of Harvard Pilgrim's Evidence Regarding Valuation

During the trial, Harvard Pilgrim presented, as an expert witness, George Moses, a former assessor for the City of Boston. He testified that in 1997, while employed by Ernst & Young, he had been engaged by Harvard Pilgrim to review the manner, reporting and filing of its annual accounts to the city. He in turn hired Norman Levy and Associates (Levy) to identify Harvard Pilgrim's assets and to establish their fair market value. The inventory and appraisal were conducted by John G. McEachern of Levy. He testified that he inspected each asset and valued it by consulting charts, Levy's database, Blue Books, and by speaking to dealers in the field. The completed report (Levy report) dated August 12, 1998, was admitted into evidence.

The trial justice, however, refused to apply the appraisal report retroactively, and entered judgment for the city with respect to the actions filed for tax years 1997 and 1998. He further found that Harvard Pilgrim's appeal for 1999 was untimely filed, and entered judgment for the city on it. With respect to tax year 2000, he accepted the evidence Harvard Pilgrim submitted concerning the fair market value of its assessable assets, and entered judgment in its favor.

In attempting to establish the fair market value of its ratable property for tax year 2000, Harvard Pilgrim called as a witness Jeffrey Lieberman (Lieberman), the project director in charge of managing the liquidation of Harvard Pilgrim.[1] He authenticated various documents and confirmed the figures used as the basis for the Levy report. Through his testimony, Harvard Pilgrim introduced into evidence an "Application for Abatement of Property

Tax for fiscal year 2000" (exhibit No. 15). According to Lieberman, it was the document that Harvard Pilgrim relied upon for what it believed to be the proper valuation and assessment. He acknowledged, however, that he was not an appraiser, and he was therefore unable to determine independently the value of any item in the report.

■■■ "[T]ax assessors are entitled to a presumption that they have performed their acts properly until the contrary is proven." *Willow Street Associates LLP v. Board of Tax Assessment Review*, 798 A.2d 896, 899–900 (R.I.2002) (per curiam) (quoting *Ferland Corp. v. Bouchard*, 626 A.2d 210, 215 (R.I.1993)). The taxpayer has the burden of proof to establish that the assessor has set a value on the subject property that exceeds fair market value. *Id.* at 900 (citing *Ferland Corp.*, 626 A.2d at 215). Here, the trial justice found that the value set by the assessor exceeded fair market value.

■■■ We begin our analysis with a reiteration of the established principles of appellate review. The standard of review of the finding of a trial justice sitting without the intervention of a jury is extremely deferential. *Granoff Realty II, Limited Partnership v. Rossi*, 823 A.2d 296, 298 (R.I.2003) (per curiam). This Court will overturn the findings of a trial justice sitting without a jury only "when the justice misconceives or overlooks material evidence or otherwise is clearly wrong." *Id.* A trial justice is in a better position to weigh the credibility of the witnesses as they testify. *Rotelli v. Catanzaro*, 754 A.2d 104, 105 (R.I.2000) (mem.). With these principles firmly in

---

**1.** Harvard Pilgrim was placed into rehabilitation on October 25, 1999, and into liquidation on January 10, 2000, pursuant to G.L. 1956 chapters 14.3 and 14.4 of title 27.

mind, we proceed to evaluate the city's assertions.

■ On appeal, the city argues that the admission of plaintiff's exhibit No. 15 was error. It asserts that Lieberman had neither personal knowledge of the source of the figures set forth in exhibit No. 15 nor expertise upon which any of the calculations of value could be predicated. Lacking an expert witness to establish valuation, Harvard Pilgrim is simply unable, as a matter of law, the city argues, to overcome the presumption that the assessor properly performed his duties.

Harvard Pilgrim counters that the trial justice properly accepted evidence submitted in its exhibit No. 15. It asserts that it submitted competent evidence through the testimony and appraisal of John McEachern (an accredited appraiser), the testimony and documents of George Moses (an economist with past experience as an assessor), as well as the testimony and documents of Lieberman. It says that McEachern authenticated the appraisal report and Lieberman authenticated the other documents.

■ After reviewing the record, we conclude that the city raised no objection at the trial level to Lieberman's testimony, and therefore has waived this argument. This Court will not review issues that are raised for the first time on appeal. *State v. Grant*, 840 A.2d 541, 546 (R.I.2004). It is well established that a "litigant must make a timely and appropriate objection during the lower court proceedings before this Court will hear the issue on appeal." *Id.* (citing *State v. Toole*, 640 A.2d 965, 972–73 (R.I.1994)). A general objection will not preserve an issue for appellate review; "assignments of error must be alleged with sufficient particularity so it will call the trial justice's attention to the basis of the objection." *Id.* at 546–47.

■ The city further argues that there was no competent expert evidence to establish that Harvard Pilgrim's appraisal of the fair market value of its tangible personal property as of December 31, 1999, met industry standards. Rather, it asserts, Harvard Pilgrim simply used the Levy report valuations as of December 31, 1997, as the basis of its valuations for December 31, 1999, in direct contravention of the Levy report's admonition that the report was neither retrospective nor prospective. Then, the city argues, Lieberman "piggy-backed" onto the Levy report the acquisition costs, as adjusted, for items acquired in 1998 and 1999. Lieberman testified that these adjustments included deductions for freight and shipping costs, exclusions for custom software and costs for installing hardware, and an obsolescence adjustment for computer assets. The city argues that all such adjustments are inadmissible because Lieberman was not an expert. Harvard Pilgrim, on the other hand, maintains that he testified from "factual experience in the offices of Harvard Pilgrim."

Once again, we conclude that the city did not properly preserve this issue for appellate review as they did not enter an objection at the time of Lieberman's testimony. Under our well-settled raise or waive rule, we conclude that the city waived its right for appellate review of this argument. *See Plourde v. Myers*, 823 A.2d 1138, 1143 (R.I.2003) (per curiam).

■ Moreover, "[t]he admission of evidence rests in the sound discretion of the trial justice and will not be disturbed absent a showing of an abuse of that discretion." *Graff v. Motta*, 748 A.2d 249, 252 (R.I.2000) (quoting *New Hampshire Insurance Co. v. Rouselle*, 732 A.2d 111, 113 (R.I.1999) (per curiam)). The trial justice did not abuse his discretion in finding the testimony of Lieberman, along with Har-

vard Pilgrim's other witnesses, credible. Issues of credibility are questions of fact.

■■■ After a careful review of the record, we conclude that the trial justice did not err in accepting the evidence submitted by Harvard Pilgrim as competent on the issue of the fair market value of plaintiff's property. The record shows that the trial justice thoughtfully considered the evidence presented by both parties, and chose to credit the evidence proffered by Harvard Pilgrim.

After considering Lieberman's background, specifically the facts that he has a master's degree in business administration and is certified in the area of hospital financial management, working since 1980 almost exclusively in the hospital industry, the trial justice stated:

"Through Lieberman, Harvard Pilgrim introduced an exhibit (Plaintiff's Ex. 15) which contained among other things, a summary of Harvard Pilgrim's 1998 and 1999 acquisitions of office fixtures and equipment and computers, leasehold improvements and the Norman Levy appraisal of 1998 with applicable exclusions and/or adjustments. The adjustments made for office equipment acquisition costs were to remove certain freight, labor and shipping costs; and, adjustments for computer software and hardware, were to remove installation costs for customized software, remove engineering and design costs as well as shipping and consulting costs. Harvard Pilgrim justified the adjustments on the ground that they were not assessable or ratable costs. Harvard Pilgrim applied an obsolescence adjustment to the computer equipment acquired during 1998 and 1999 based upon its experience of selling such assets on the open market at about 20% of acquisition cost. Finally, Harvard Pilgrim made adjustments to leasehold improvements because cer-

tain of the reported assets had been previously abandoned."

He then found that

"the City's depreciation schedules and methods used for tax year 2000 do not reflect the fair market value of Harvard Pilgrim's assets. * * * The failure of the City to consider physical depreciation and obsolescence factors among other things as argued by Harvard Pilgrim renders the City's method of assessment fundamentally flawed as constituted and applied * * *."

We are satisfied that the trial justice was well within his discretion so to find.

For the aforementioned reasons, we affirm the judgment of the trial justice and remand the record to the Superior Court.